## Chesapeake & Ohio Railway Company v. Jesse.

(Decided June 9, 1914.)

### Appeal from Floyd Circuit Court.

1. Railroads—Action Against for Personal Injuries—Evidence—Submission to Jury.—In action by member of work crew for personal injuries caused by the alleged negligence of those in charge of the train in starting it without signal or warning, and whereby he was thrown against mail crane, the evidence held sufficient to take the case to the jury, and the injuries such as to authorize a verdict for $500.00.

2. Railroads—Action for Personal Injuries—Loss of Plaintiff's Hearing—Recovery of Hearing—Trial.—The statement in appellant's brief that the plaintiff had recovered his hearing since the trial cannot be considered.

3. Railroads—Action for Damages for Personal Injuries—Variance.—In an action for personal injuries as a result of being thrown against a mail crane by the alleged negligence of the servants of the train, the contention of defendant that there is a fatal variance between the pleading and proof is not sustained, the issue being fairly joined upon the question as to whether warning was given as to the starting of the train.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING, and F. T. D. WALLACE for appellant.

J. C. HOPKINS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee, Jesse, was an employee of the appellant, Railway Company, as a section hand, in Floyd County, but had, with the other section hands, occasionally served with the crew on the work train. In September, 1912, while in service with the work train, he received the injuries complained of, and brought this suit to recover

$3,000, claiming that the injuries were the result of negligence of appellant and its agents and servants in charge of the work train. This work train carried two or three carloads of steel rails which the men were unloading along the track near Prestonsburg. It seems the railroad company was engaged in taking up old rails, and putting down new and larger ones, and the train would move along slowly so that the rails could be lifted over the side of the cars at about the place where they were used in relaying the track.

There was a crane and derrick on one car, and with this they would pick up the rails with a steam hoist, and lower them on each side of the car at the places needed. In doing this the work train, of course, occupied the main track, and, in advance of the coming of the regular scheduled trains, the crew would board the work train so that it could take a siding at or near Prestonsburg, and give a clear track.

The duties of appellee, Jesse, and another workman named Musick were to guide the rails after they had been lifted by the derrick, and by ropes tied to the end of the derrick, they would pull the rails clear of the car so that they could be lowered to the ground at the right place. From two to three rail lengths, that is, from 60 to 90 feet of where Jesse stood on the ground to lower these rails, there was a mail crane. The purpose of this apparatus was to place mail sacks so that they could be taken by moving trains. At all times except when mail trains were due and when it was intended to use this crane, it was nothing more than a straight post situated about four feet from the track. When it carried mail for delivery to the trains, there were two arms hinged to it, and they were pulled out from the post at right angles to it, so that they extended very close to the track. Between these two arms the mail sack was suspended. When the mail crane was in this position there was not sufficient room for one on the side of a moving car to pass it without injury.

The work train had gone into the siding at Prestonsburg, where they learned that the passenger train was about thirty minutes late. At this time there was not a mail sack on the crane, and therefore the arms of it were folded back against, and in line with the post, and in no way interfered with or endangered the workmen who perchance might ride or swing on the outside of the moving work train. Finding that thirty minutes more time

could be utilized in unloading rails, the conductor arranged with the engineer to back the train to its place of work. The conductor was to stay on the track well in advance of the engine so that he could hear the passenger train when it whistled at Cliff, a station several miles away from Prestonsburg. In this way he planned to give the signal to the engineer, and have ample time to get the work train into the siding, clearing the main track. Some time during this thirty minutes, the postman, or some person, pulled down the arms of the mail crane, and suspended a mail sack between them. Appellee did not know that this had been done, nor does any other witness testify concerning it. While the work train and the crew were thus engaged, appellee claims that without any signal or warning from any one to him, the train suddenly started, and, pursuant to instructions and the custom prevalent, it was his duty to stay with the train. For that reason, he dropped the guide rope ran and caught hold of the moving train by hand hold, placing his foot in the stirrup on the side. All witnesses agree that the train was running from four to six miles an hour, and appellee says he was endeavoring to get aboard the car. It was the ordinary steel ''Gondola'' or coal car. Before he could get in the clear, as he testifies, the train ran 60 or 90 feet and beyond the mail crane. His head struck the arms of the crane or sack. The sack was knocked off, but appellee was able to hold on until he could get off the train without further injury.

Tom Musick, who was working with him, and using the other guide rope, was at the other end of the car. As he passed the mail crane he noticed the mail sack lying on the ground. The arms of their own force had gone back into place against the post. He passed without injury, but did not know that appellee had come in contact with it, or had been hurt. In a few moments appellee was observed to be off a little ways from the track, and the train men came to his relief. The side of his head was bruised, and a hole cut in the lobe of his ear. These external injuries were of minor importance, and soon healed. Appellee claims that it has affected his hearing, and in that way given him a permanent injury. The instructions of the lower court submitted the case to the jury on the question as to whether those in charge of the train gave any signal or warning that the train was about to start, or whether appellee received any notice

thereof. The jury returned a verdict in his favor for $500.

Some of the witnesses swear that the conductor and section foreman notified the crew to throw in the lines, secure the derrick, and get aboard. Appellee denies that he heard any such warning, and no witness attempts to bring the notice home to him. In fact, we think the weight of the evidence supports the idea that such warning was not given. Those in charge of the train were trying to utilize every minute of spare time for work, and the conductor, from his own evidence, was taking a chance of hearing the on-coming passenger train's whistle at the next station. As soon as he heard it or became aware that the passenger train was nearby, he signaled the engineer, and the train immediately started without taking time to let the employes get aboard safely. Appellee admits that he knew the position and use of the mail crane, but he did not know that the mail sack had been put upon it, or that the arms of it had been extended toward the track.

Appellant insists that a peremptory instruction should have been given, but we are of the opinion that the evidence was sufficient to take the case to the jury on the question as to whether those in charge of the train negligently failed to give the employes notice or warning in time for them to get aboard.

Appellant complains that the damages allowed are excessive, and we are informed by its brief, that since the trial, and very soon after it, appellee recovered his hearing, and has been able to do his accustomed amount of work. If this was a trial *de novo,* we could consider the facts which the brief disclose. On the trial below, appellee's statement with reference to his injury, and the permanency of it went uncontradicted.

Another objection is that one of the jurors on his *voir dire* examination concealed the fact of his relationship with appellee, and did not tell that he and appellee were guests at the same house, George Smith's, the night before. An affidavit by appellant's counsel is made a part of his motion for a new trial, and from it we discover that Mart Smith, one of the jurors, in answer to appellant's counsel, stated that he was not related to appellee. The affidavit shows that Mart Smith is a brother of one George Smith, and that George Smith is the husband of a sister of appellee's wife. We think the jury-

man was well within the range of truth when he gave a negative answer to the inquiry. No inquiry was made as to his whereabouts the night before. C. R. & B. Co. v. Roberts, 18 S. E., 315.

Appellant also insists that there is a fatal variance between the pleading and proof. The negligence set up in the petition is, that while appellee was engaged *as a workman on the train,* and while holding to a line busily engaged in unloading steel rails, and without notice or warning of any kind, the engineer in charge of the train "recklessly, negligently and without regard to the safety or welfare of this plaintiff, and without signal, notice or warning of any kind, caused the train to jerk backward from the position in which this plaintiff was standing, and so carelessly and wantonly jerked and moved said train, that it caused plaintiff's head and neck to be violently crushed against a mail crane standing near the track, etc."

This would be a serious objection, but it is apparent from the answer that the appellant was not mislead, for it corrects appellee's error in stating his case, and explains that instead of plaintiff being at work on the train, he "wilfully jumped from the ground onto the side of a moving car by putting his feet in an iron stirrup, and holding on to the side of the car while it was in motion, and nearby the mail crane, and exposed himself to the danger of being struck by same while the car was in motion, when by getting up into the car he could have placed himself beyond all danger." The answer then charges that plaintiff's injury was due to his carelessly riding outside of the car instead of getting into it, and thereby necessarily exposing himself to the mail crane.

Plaintiff by reply accepts the correction, other than the negligence which defendant alleged, and he further says "that he was not given time sufficient or any opportunity to get into the car, that the car was moved suddenly and without notice to this plaintiff."

From this state of the pleadings it will readily be seen that appellant had no misconception of the character of negligence relied upon for recovery, and issue was joined and the proof heard upon the question as to whether warning was given that the train would start in order that appellee and the train crew could safely get aboard.

Perceiving no reversible error, the judgment is affirmed.