## Kentucky Traction & Terminal Company v. Waits, By et al.

(Decided December 9, 1915.)

Appeal from Franklin Circuit Court.

1.  Trial—Continuance on Account of Amended Pleading.—Although an amended pleading setting up a new ground of negligence was allowed to be filed at the beginning of the trial, it was not error to refuse to continue the case for the defendant, as the amended petition was withdrawn before any evidence was offered in support of it.

2. Trial—Continuance—Discretion of Trial Court.—The trial court has a large discretion in the matter of granting a continuance on account of the absence of witnesses whose evidence in the form of affidavits is permitted to be read, and its decision will not be interfered with unless it is clearly shown that it was prejudicial error to refuse the continuance.

3. Pleading—Proof—Variance.—Under sections 129-131, of the Civil Code, a variance is not material which does not mislead a party to his prejudice, and is fatal only when the petition is unproved not in some particular or particulars only, but in its general scope and meaning.

4. New Trial—Newly Discovered Evidence.—A new trial should not be granted on the ground of newly discovered evidence that is merely cumulative.

WALLACE MUIR, STOLL & BUSH and GUY H. BRIGGS for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this suit by Waits to recover damages for personal injuries resulting in the loss of one leg, there was a verdict and judgment against the traction company for five thousand dollars, and it appeals.

Waits testified, in substance, that he was standing on the sidewalk nearly opposite a place at which the cars of the traction company regularly stopped waiting for a car on which to ride from South Frankfort to North Frankfort. That when the car was approaching this stopping place he ran out in the street and signalled the motorman to stop so that he might get on, and in obedience to his signal the car slowed down to such a low rate of speed that any person could have gotten on it with safety. That when he attempted, after the car slowed down, to get on and had one foot on the front step, with his hands on the hand-hold, the motorman suddenly, and without any warning or notice, applied the current, thereby causing the speed of the car to at once increase with a jump or jerk. That when the speed of the car was in this manner increased he was thrown to the ground and under the car. In this statement of how the accident happened his evidence was supported by that of several persons who were standing on the sidewalk nearby where Waits said the car slowed down for the purpose of letting him get on and who had a plain view of what occurred.

The motorman testified, in substance, that when the car was approaching and near to the stopping point described by Waits, it was running about eight miles an hour, the usual rate of speed. That he did not see Waits or any one else give him a signal to stop, nor did he intend to stop at this place, or reduce the speed of the car for the purpose of letting Waits get on or for any other purpose. That the first he saw of Waits was when he heard somebody whistle and, on looking around, saw Waits in the act of jumping on the car. That he then threw the current off, set the brake and tried to stop the car. That when Waits attempted to get on the car he slipped and fell under the wheels. That there was no jerk or sudden movement forward of the car at any time, the only change in the movement being the effort on his part to slow down the speed of the car when he saw Waits attempting to get on. In the statements in respect to the movement of the car, the motorman was corroborated by several witnesses.

It will thus be seen that the evidence for the opposing parties presented sharply the simple issue whether the accident was caused by the negligence of the motorman in suddenly starting the car with a jerk after it had been slowed down for the purpose of letting Waits get on and before he had opportunity to do so, or whether it was caused by the negligence of Waits in attempting to board the car without giving the motorman any signal to stop or notice of the fact that he was about to get on, and at a time when the car was running at too high a rate of speed to be boarded with safety.

Upon this issue of fact it may here be observed that there was sufficient evidence supporting the theories of the case advanced by both of the parties to sustain a verdict for either of them, and so there is no reason for interfering with the verdict on the ground that it was flagrantly against the evidence. It was the province of the jury to decide whether they would believe Waits and his witnesses or the motorman and the evidence supporting his version of the accident.

The petition was filed in August, 1912, and charged that the plaintiff, "while attempting to board one of the defendant's cars, as a passenger, on Bridge street, in South Frankfort, was, by the general negligence of the defendant, its agents and servants then and there in charge of said car, in the operation thereof, struck by

said car and thrown upon the track and under the wheels thereof, which so greatly bruised and injured one his legs that the same had to be amputated." It also charged that the defendant was guilty of further and other acts of negligence in failing to provide its car with proper brakes and appliances for stopping the same; but as there was no evidence offered in support of this last ground of negligence, this averment of the petition need not be further noticed.

The answer was merely a traverse of the petition, accompanied by a plea of contributory negligence.

The case, after being continued from time to time, came on for trial at the September term, 1914. On this day the record shows that the plaintiff, by counsel, tendered an amended petition setting up a new ground of negligence, to the filing of which objection was made, and, the objection being overruled, the pleading was filed, as was also the answer of the defendant to this pleading.

Upon this state of the record counsel for the traction company argue that the court committed error in not continuing the case on account of the filing of this amended petition. A sufficient answer to this is that the amended petition was withdrawn on the following day, and before any evidence was offered or attempted to be offered in support of it.

It is said, however, that counsel for Waits, in stating the case to the jury, while this amended petition was in the record, used the facts therein alleged as the basis for a vigorous assault on the competency of the motorman, who, it was averred in the amended petition, was reckless, unskillful and incompetent; and it is suggested that counsel put this amended petition in the case in order to be justified in the attack made on the qualifications, or rather lack of qualification, possessed by the motorman. All this, however, is mere assumption on the part of counsel for the traction company, as we do not find in the record any facts or circumstances that would warrant us in concluding that counsel for Waits tendered this amended pleading for the purpose intimated.

On the trial of the case the traction company asked a continuance on account of the absence of four witnesses, whose evidence would, in some respects, have corroborated that of the motorman and other witnesses introduced in behalf of the company; but the court overruled the motion, allowing, however, the affidavits of

what these witnesses would state to be read as the evidence of the absent witnesses, and this ruling of the court is assigned as error.

We do not, however, find any error to the prejudice of the substantial rights of the traction company in this ruling. The evidence of these witnesses would merely have corroborated the evidence of several other witnesses who testified in behalf of the company, and when a case has been pending as long as this one was, very urgent reasons for a continuance should be shown before it will be error to refuse one, especially when, as in this case, the court permits the affidavits of what the absent witnesses would say to be read as their evidence. In matters like this the discretion of the trial court will not be interfered with unless it is clear that the substantial rights of the complaining party were prejudiced by the ruling. It might also be here noticed that counsel for the traction company on the trial of the case did not regard the evidence of these absent witnesses as very material, as they did not offer to read as evidence the affidavits setting out what they would have testified to if present.

It is further insisted that the traction company was entitled to a peremptory instruction because of a variance between the pleadings of the plaintiff and his proof; and, further, because the instructions of the court were erroneous in not being authorized by the petition.

In addition to the averments of negligence heretofore set out, another ground of negligence set up was the failure of the traction company to provide its cars with sufficient brakes and appliances for stopping the same; but as there was no evidence offered in support of this ground of negligence, and the case went to trial on the averments we have copied from the petition it need not be further noticed.

With the pleadings and evidence as stated, the court instructed the jury that ''It was the duty of the defendant, the Kentucky Traction and Terminal Company, and its agents in charge of the car upon which the plaintiff, Alexander Waits, was seeking to become a passenger, after they were notified and knew, if they did know, that plaintiff was seeking to become a passenger, to observe the highest degree of care which a prudent person would exercise under like or similar circumstances in the management and control of the car, to enable plaintiff to board it with reasonable safety, and if the jury believe

from the evidence that the motorman in charge of defendant's car failed to exercise that degree of care after he knew plaintiff's intention to become a passenger, and failed to give the plaintiff a reasonable opportunity to board said car, after same had slowed down to an extent or degree which would reasonably warrant an ordinarily prudent person in assuming he could board same with reasonable safety to himself by the exercise of ordinary care; or if they believe from the evidence that the motorman started said car forward, after it had slowed down and plaintiff had attempted to board it, with an unnecessary, unusual jerk or lurch, and the plaintiff was thereby thrown under the car and injured, the law is for him and the jury should so find."

They were further told that "If at the time the plaintiff attempted to board defendant's car, it was running at a rate of speed which to a person of ordinary prudence and care would have been dangerous to attempt to board same, it was negligence on the part of the plaintiff to attempt to board said car; and if they believe from the evidence that he did attempt to board said car when it was running at such a rate of speed, they should find for the defendant."

They were also told that "The defendant owed no duty to the plaintiff until the motorman knew plaintiff was offering himself as a passenger upon defendant's car."

The instructions submitted, we think, fairly the issues in the case. As a matter of law it was the duty of the motorman to exercise the highest degree of care which a prudent person would exercise under similar circumstances in the management of the car in order to enable Waits to board it with reasonable safety, after the motorman knew of his intention to become a passenger at this regular stopping place; and it was also negligence if the motorman, after the car slowed down for the purpose of permitting Waits to become a passenger, and before he had reasonable opportunity to get on, started the car. And, as a matter of law, it was negligence on the part of Waits if he attempted to board the car when it was running at such a rate of speed as to make it dangerous for a person of ordinary prudence and care to attempt to board it. It was also correctly stated, under the facts of this case, that the traction company owed no duty to Waits until the motorman knew he intended

offering himself as a passenger. So that the question is, was there such a variance between the pleadings and the evidence as to amount to a failure of proof, or such a variance between the pleadings and instructions as to make the instructions objectionable to the rule of practice that the instructions should be based on and conform to the pleadings?

It is an elementary rule of practice in this State that in actions for tort like this a general averment of negligence in the operation and management of the car is sufficient, but that if the plaintiff points out the particular negligence relied on, he will be confined to evidence of the specific wrong-doing complained of, because otherwise the defendant would be misled by the petition to which he has a right to look for the ground on which a recovery will be sought. Here the petition did not specify any particular act of negligence, but charged that the injuries complained of were caused by "the general negligence of the defendant, its agents and servants then and there in charge of said car, in the operation thereof," on account of which negligence the plaintiff was "struck by said car and thrown upon the tracks and under the wheels thereof." The fault in this pleading considered in connection with the evidence consists in the fact that after setting out the general negligence, it charged that by reason thereof the plaintiff was struck by the car and thrown upon the track.

That the petition as applied to the facts is not aptly or accurately worded must be conceded. The plaintiff could have contented himself with the general charge that by the negligence of the defendant in the operation of the car the plaintiff was thrown upon the track and under the wheels of the car, without using the words, "struck by said car and." But, plainly, these quoted words did not set up a new ground of negligence. They may be treated as mere surplusage that could not have misled the defendant into the belief that he would not have to meet a general charge of negligence in the operation of the car. Under sections 129-131 of the Civil Code, a variance is not material which does not mislead a party to his prejudice, and is fatal only when the petition is "unproved, not in some particular or particulars only, but in its general scope and meaning." And we are well satisfied that the general allegation of negligence in this petition was not unproven or the verbal variance so ma-

terial as to be prejudicial. The error, if it be one, was not substantial, and we can only reverse judgments for substantial errors. It is true the instructions did not follow strictly the wording of the petition, but they did conform to the evidence, between which and the pleading there was no material variance.

It is further insisted that the court should have granted a new trial on the ground of newly discovered evidence. The ground for a new trial on account of newly discovered evidence is rested on affidavits made by Moore, Wasson and Laughlin.

The affidavit of Moore set out that at the time of the accident he was in the employ of the traction company and that when Waits was on the way to the hospital a few minutes after the accident occurred, he said, in response to questions, that "It was not Flynn's (the motorman) fault, and he is in no way to blame, and I don't blame him for this accident."

We do not attach controlling importance to what Waits said just a few minutes after the accident happened and when he was evidently suffering from the shock as well as the pain of having his leg crushed under the wheels of the car. Aside from this, it may well be said that the traction company was lacking in diligence in failing to learn what, if anything, Waits said to Moore, its employe, until after the trial of the case was over, two years after the accident occurred.

Wasson said that about three months before the trial Waits, in response to a question from Wasson as to how the accident occurred, said, "I wanted to go over to town and I saw the car coming, and I ran and tried to catch it. It was raining and the streets were wet, and the steps were wet, and I slipped and fell under the car," and also that Waits said nothing about any jerk of the car. This alleged statement of Waits was merely negative in its character and did not touch the vital point in the case upon which a recovery was sought.

Laughlin in his affidavit said, "He was standing nearby where the accident occurred and saw Waits going from the street towards the car, but he did not give any signal to the motorman to stop and the motorman did not check the speed of the car. He further said that when Waits attempted to get on the car his foot slipped and he fell under the wheels."

We have frequently written that a new trial should not be granted on the ground of newly discovered evidence where it was merely cumulative or unless it was of such a character as to leave the impression that the jury would have been influenced by it to make a verdict otherwise than they did; and we do not regard the evidence of Laughlin as coming within the rule. The traction company introduced six witnesses who said that the speed of the car was not slowed up nor was there any jerk or sudden starting before the accident.

The suggestion is made that it was error to instruct the jury that they might compensate Waits for mental pain and suffering "that it was reasonably certain he would hereafter endure, if any," because there was no evidence that he would thereafter suffer any pain on account of the loss of his leg. No evidence on this subject was needed, but aside from this the amount awarded was not more than compensation for the loss of his leg.

The judgment is affirmed.