## Seaboard Oil Company v. Britt.

(Decided May 5, 1925.)

### Appeal from Allen Circuit Court.

1. Waters and Water Courses—Witnesses Testifying to Damage from Pollution should State Amount of Each Item.—In action for damages for pollution of creek by defendant's oil wells, witnesses who testified as to pollution of creek, and that plaintiff's crops

were damaged and his live stock sickened; should have been allowed to state extent of damage arising from each item and amount in dollars and cents of such damage.

2. Waters and Water Courses—Instruction Held Erroneous as Affording no Measure of Damages for Pollution of Stream.—In action for damages for pollution of creek by defendant's oil wells, instruction to find for plaintiff if defendant polluted stream for such amount as plaintiff was damaged as result thereof, not to exceed $2,000.00, held erroneous as affording jury no criterion by which to measure damages.

3. Waters and Water Courses—Instruction Held Erroneous as Affording no Measure of Damages to Crops by Pollution of Stream. —In action for damages for pollution of creek by defendant's oil wells, instruction to award plaintiff actual damage sustained within five years preceding filing of his suit on account of being deprived of use of water of stream during such time, and for any damages to his crops overflowed and injured, held erroneous, as affording jury no criterion by which to measure damages.

4. Waters and Water Courses—Instruction Held Erroneous as Affording no Measure of Damages for Injury to Stock by Pollution of Stream.—In action for damages for pollution of creek by defendant's oil wells, instruction that jury could find for plaintiff for death of his cow, if it died as a result of pollution, and for inconvenience or expenses in watering his stock, held erroneous, as affording jury no measure of damages.

5. Waters and Water Courses—Measure of Damages for Pollution of Stream, Stated.—As injury to plaintiff's farm by pollution of creek by defendant's oil wells was necessarily temporary, measure of damages was diminution in value of use of lands caused by overflow up to time of trial, if an amended petition was filed bringing it up to that time, otherwise up to filing of petition.

6. Waters and Water Courses—Measure of Damages for Injury to Stock Drinking Polluted Water, Stated.—If live stock were made sick by drinking water from polluted stream, plaintiff was entitled to recover fair market value of such animals as died at time of their death; and such damages as were direct and proximate result of pollution resulting in loss of use and service of other animals, medical treatment, and attention, not to exceed amount claimed in petition.

7. Appeal and Error—Errors Not Prejudicial to Substantial Rights Ignored by Court of Appeals—Reversal Had where Instructions Calculated to Mislead Jury.—Errors not prejudicial to substantial rights of appellant are ignored by Court of Appeals; but where instructions are at variance with established rules of law and calculated to mislead jury, Court of Appeals must grant appeal and reverse judgment.

HARPER & DENTON and GARNETT & VAN WINKLE for appellant.

GARDNER, OLIVER & DIXON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant, oil company, and appellee, Britt, own adjoining farms on a small creek about four miles from Scottsville, in Allen county. The farm belonging to the company lays on the creek above that of appellee, Britt. The creek that runs through appellant's lands passes through the lands of appellee. The company is operating for oil on its place and had some forty or more producing wells on its property at the time of the commencement of this action.

To take care of its production the company had four or five large oil tanks standing on the brink of the creek. From these tanks more or less oil escaped and ran down the slope into the creek, from whence it was carried down through and over the lands of appellee, Britt. His farm, so he averred, was of the value of $5,000.00 before the tanks were so located, but owing to the location of the tanks and the carrying down of the oil and other foreign substances the productivity thereof was reduced, crops destroyed, grass and meadows ruined, live stock poisoned and the water supply polluted, to his damage in the sum of 2,000.00, so it was averred in his petition. The jury returned a verdict in Britt's favor for $450.00. Judgment being entered thereon the oil company has prayed an appeal.

Appellant company insists (1) that the verdict is excessive and that the instructions are erroneous. It also relies upon some other grounds for a reversal. The evidence is so indefinite and general in its nature as to make it absolutely impossible to tell to what extent appellee, Britt, has been damaged, if at all, by the escape of oil from the tanks of appellant company. While some of the witnesses testifying for appellee stated that oil from the tanks of the appellant company was carried down upon and through the lands of appellee, Britt, polluting the water and damaging crops and vegetation as well as sickening cattle and other live stock, no facts were given showing the extent of the loss sustained on either of these items. There was a statement, however, that the farm, which was stated to be of the value of $5,000.00 for farming and grazing purposes before the erection of the tanks, was at the time of the trial of the value of only $3,000.00, the deterioration in value resulting from the overflow of oil and other foreign substances

from appellant's wells and tanks. The witnesses should have been allowed to state the extent of damage arising from each item and the amount in dollars and cents of such damages.

The first instruction given by the court to the jury, in substance, directed it to find for the plaintiff, Britt, if it believed from the evidence that oil and other foreign substances located on the lands of defendant company were allowed to wash down on to the lands of plaintiff, Britt, and pollute the stream and render it unfit for use and ''to find for the plaintiff such amount as he was damaged as the result thereof, not to exceed $2,000.00.'' This instruction upon the measure of damages was both boundless and incorrect. It afforded the jury no criterion by which to measure the damages and arrive at a fair compensatory verdict.

The second instruction was the converse of the first; the third instruction was one upon the measure of damages, and directed the jury that in case it found for the plaintiff Britt to award him ''the actual damage sustained by plaintiff within the last five years preceding the filing of plaintiff's suit, September 5, 1923, on account of being deprived of the use of the water of the said stream for domestic or foreign purposes during said time, for damages, if any, to plaintiff's crop on lands contiguous to said stream of water that was over-flowed and injured.'' This, likewise, was limitless.

The jury was also instructed that it could find for the plaintiff Britt ''on account of the death of plaintiff's cow, if the jury believed it died as a result thereof;'' and further that it could ''find for the plaintiff on account of inconvenience or expenses to which he had been put, if any, in watering his stock.'' The instruction from which we have quoted afforded no measure of damages by which the jury could ascertain the amount to which the plaintiff was entitled, if anything. As the tanks were merely temporary structures the injury which resulted was necessarily temporary. In such case the measure of damage is the diminution in the value of the use of the lands caused by the overflow up to the time of the trial, if an amended petition be filed, bringing it up to that time; otherwise up to the filing of the petition. R. R. Co. v. Roberts, 144 Ky. 820; Toebbe v. City of Covington, 145 Ky. 763; Trust Co. v. Shelbyville Light Co., 33 R. 202.

If the cattle and other live stock of appellee Britt were made sick by drinking water from the polluted stream the value of such animals that died as a result of drinking the polluted water should be established by evidence and submitted to the jury by an instruction to find for the plaintiff Britt the fair market value of the animal or animals (describing them) so lost at the time they sickened and died. With respect to such animals as were made sick and which did not die from drinking the polluted water the plaintiff was entitled to recover such damages as he sustained, if any, as the direct and proximate result of the wrongful conduct of the defendant in polluting the stream, if it did so, resulting in the loss of the use and service of such animal or animals, cost of the medical treatment, and attention rendered necessary by reason of such sickness, if any, not to exceed the amount claimed in the petition.

In instructing the jury in a somewhat similar case, C., N. O. & T. P. Ry. Co. v. Gillespie, 113 S. W. (Ky.) 89, the trial court told the jury, "You will find such sum as you will believe will fairly compensate her (plaintiff) for the damage and injury to her spring, if any there was caused, etc." In commenting upon this instruction we said, in substance, that it embodied no measure of damages. "Under that language the jury might have roamed at will and fixed upon any amount they saw fit." That is equally true of the instructions under consideration in the instant case.

We regret exceedingly to be forced to grant an appeal for the purpose of reversing the judgment, but we find it necessary in order that the parties may have a trial under proper instructions from the excellent but greatly overworked presiding judge. We are aware that in the great rush of business under which many trial judges labor that many small errors creep in in spite of great care and patience on the part of the court, and it is for this reason that errors which do not prejudice the substantial rights of the appellant are ignored by this court; but when our attention is specifically directed to instructions given on the trial which are at variance with established rules of law, and which were calculated to and probably did mislead the jury, we have no option but to grant the appeal and reverse the judgment, however much we may dislike to do so.

For the reasons indicated appeal is granted and the judgment is reversed.