# Chesapeake & O. Ry. Co. v. Carroll's Adm'r et al.

(Decided March 24, 1933.)

(As Modified on Denial of Rehearing June 23, 1933.)

704

HUNT & BUSH, B. L. KESSINGER and JOHN M. THEOBALD for appellant.

R. C. LITTLETON and DYSARD & TINSLEY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— 'Affirming.

The Chesapeake & Ohio Railway Company is appealing from a judgment for $10,000 in favor of the administrator of Charles Carroll, deceased, in an action brought under the Federal Employers' Liability Act (45 USCA secs. 51-59) to recover for decedent's death alleged to have been caused by negligence of the company's servants.

As grounds for reversal counsel for appellant argue (1) that there is a fatal variance between the allegations of the petition and the proof offered to support same, and (2) that instruction No. 1, given by the court, is erroneous, in that it assumed certain facts to be true, and also that it did not conform to either pleading or proof.

The facts, about which there is no controversy, in substance are: For many years Carroll had been serving appellant in the capacity of track walker. His duties were to go over and inspect a number of miles of appellant's track and see that it was in proper repair and

free from obstructions. When not engaged in the discharge of those duties, he would work as a section hand with one of appellant's section crews, and some time, in the absence of the section foreman, would have charge of the crew. On the day of the accident, Carroll had gone over the tracks as usual, and about noon returned his velocipede and tools to the company's toolhouse at Corey. This station is situated on Corey Hill, the grade of which is such as to require an extra engine to assist trains in making the ascent. This extra engine called the "helper engine," operated between Olive Hill and Aden. Grahn is another station between Corey and Aden. After disposing of his velocipede and tools, decedent joined the section crew in charge of the regular foreman Hez Lowe, and assisted in setting and repairing telegraph posts along the railroad right of way toward Grahn. When the work on the telegraph lines was finished, the foreman and one of his men went to Grahn to get information or orders as to the movements of trains; it being his intention to take the crew to Olive Hill. The operator at Grahn gave Lowe a copy of a telegram from the train dispatcher at Ashland reading:

"Extra 1105 East and helper 1376 left Olive Hill 2:25 P. M. No. 22 on time, No. 71 called at 2:15 P. M. Look out for motor cars. H. I. M."

Upon receipt of this telegram, Lowe took the other section men on his motorcar and proceeded westward to Blevins Crossing, where the motorcar was removed from the track to allow freight train No. 94 to pass. This train as is explained in evidence was extra No. 1105, referred to in the train dispatcher's order given to Lowe. After it passed, the motorcar was replaced, and the journey continued westward with Lowe driving and the members of the section crew sitting on the side of the truck. After they had gone nearly a mile, and were approaching a deep cut with rock walls practically perpendicular, and where there was a considerable curve to the right in the track, the helper engine suddenly appeared coming out of the cut from the opposite direction. Some one shouted the alarm, and all the men jumped to safety, except Carroll, who was so seated that he could not see the approaching engine. In the collision which occurred an instant after the alarm was

given Carroll received injuries from which he died a few hours later. The pertinent allegations of the petition read:

"* * * Plaintiff's intestate was injured and killed while riding on one of defendant's motor vehicles and exercising ordinary care for his own safety by the carelessness and negligence of defendant, its agents, servants and employees superior in authority to deceased by running one of its locomotives against and over the motor vehicle upon which he was riding, thereby, injuring and killing the deceased, Charles Carroll. * * *

"Plaintiff says that the death of his intestate was the direct and proximate result of the negligence and carelessness of defendant, its agents, servants, and employees superior in authority to his intestate."

Counsel for appellant quote the first paragraph of the allegations of the petition as above set out and argue in effect that the allegations necessarily mean that appellant's agent, servants, and employees, in charge of the engine, so operated it as to violate a duty which appellant owed to Carroll as a member of the section crew riding on a motor truck and that it is susceptible of no other construction; that there is nothing contained in the petition to advise appellant that appellee was complaining of or intended to complain or to offer proof as to any conduct on the part of the foreman of the section crew; that the entire proof offered to establish negligence was directed to the conduct of the section foreman who had nothing to do with the operation of the engine. It is therefore insisted by counsel that there was a complete and fatal variance between the acts of negligence alleged in the petition and the act or acts of negligence attempted to be established by proof and submitted to the jury by the court's instructions, which would be true if counsel are correct in their interpretation of the petition.

A casual reading of the first paragraph of the quoted allegations of the petition might lead to the conclusion reached by counsel, since it is inaptly worded and more or less ambiguous, however, when both of the quoted paragraphs are read and considered together it will be seen that the petition does not allege negligence

upon part of those in charge of and operating the helper engine or other specific acts of negligence, but in general terms, and in substance and effect, alleges that by and through the negligence of appellant's servants, agents, and employees, superior in authority to Carroll, the engine was caused to run against and over the motor truck, thereby inflicting the injuries which resulted in Carroll's death. It is therefore manifest that under the allegations of the petition the evidence offered to establish negligence was competent and authorized the instruction submitting to the jury the issues made by pleading and proof.

It might further be pointed out that under the provisions of our Civil Code of Practice every variance between pleading and proof will not authorize a reversal.

Section 129 of the Civil Code of Practice provides: "No variance between pleadings and proof is material, which does not mislead a party, to his prejudice, in maintaining his action or defense upon the merits. A party who claims to have been so misled must show that fact to the satisfaction of the court; and, thereupon, the court may order the pleading to be amended, upon such terms as may be just."

Counsel for appellant give recognition to this Code provision, but insist that it has no application because the variance is very material in this instance, in that the pleading called for proof as to one instrumentality, while all the evidence related to the operation of another.

The language of this section of the Code is so clear and concise as to repel all doubt as to its meaning, and this court has consistently refused to reverse judgments because of variance between pleadings and proof, unless it was manifest that the complaining party was thereby misled to his prejudice in the preparation or trial of the action. It is not enough to show a variance, but the party claiming to have been misled must also show to the satisfaction of the court that it operated to his prejudice. L. & N. Ry. Co. v. Spatig, 158 Ky. 263, 164 S. W. 811, 812; Ky. Traction & Terminal Company v. Waits, 167 Ky. 236, 180 S. W. 356. In the former case it was said:

"If in fact there was a variance, it will not be ground for reversal, unless it was such as to mislead the appellant in its defense, and unless it really affected its substantial rights."

If we should give to the quoted portion of the petition the narrow and restricted meaning contended for by appellant, there would yet remain the absence of showing that appellant was substantially or at all prejudiced. There was no showing in the court below that appellant was prejudiced by the alleged variance, and, while it is stated by counsel that the variance was material, it is not even argued in brief that it was prejudiced in maintaining its defense. On the other hand, the record clearly discloses that it was not so prejudiced.

It is alleged in the petition that Carroll received the injuries from which he died in a collision between the motorcar and the helper engine, and that this was brought about as a result of negligence upon part of appellant's servants. This was established by proof, and in the circumstances it is not material whether the motor was negligently brought in collision with the engine or whether the accident was due to negligence in the operation of the engine. Ky. Traction & Terminal Co. v. Waits, supra; C. & O. Ry. Co. v. Jesse, 159 Ky. 450, 167 S. W. 407; L. & N. Ry. Co. v. Spatig, supra; Beard v. Klusmeier, 158 Ky. 153, 164 S. W. 319, 50 L. R. A. (N. S.) 1100, Ann. Cas. 1915 D. 342. In the circumstances, we are constrained to hold that there was no such variance as would warrant a reversal.

It is asserted by counsel for appellant that instruction No. 1 is erroneous because (1) the question of negligence submitted under it did not conform to either pleading or evidence; (2) it erroneously assumed that the section foreman knew the helper engine was proceeding east; (3) there was no evidence of want of care on his part in the operation of the motortruck at the time of the accident.

The instruction sets out the duties of appellant's servants in the operation of the motortruck, and authorized a recovery if the jury believed from the evidence that Carroll's death was due to a failure upon the part of appellant's servants to observe these duties, and, from what we have already stated, it is apparent

that the first ground of attack on this instruction is wholly wanting in merit.

The instruction does assume that the section foreman knew the helper engine's movements were controlled by movements of the trains, and that some time when it has assisted a train over Corey Hill it would proceed ahead to a station on the other side, and at other times would return to the station from whence it started, a fact which was known to the foreman and to the other section men. While it is not apparent that the section foreman actually had knowledge at the time that the helper engine was proceeding east, he did have in his possession the train dispatcher's order showing that it left Olive Hill at 2:25 going in that direction, and he knew that, if it continued its course to Aden as it often did, the motortruck would necessarily meet it. To say the least, he was charged with knowledge that the engine was probably coming meeting him, and he should have anticipated its presence on the track. While the instruction is defective in the respect indicated, it is apparent that it was not prejudicial, to appellant, since in the proven circumstances the result would have been the same if the instruction had met every technical requirement.

Errors in instruction which are not prejudicial to substantial rights will be ignored on appeal. Such errors are grounds for reversal only when so contrary to the law and evidence or otherwise so defective as to be calculated to mislead the jury and result in an unjust verdict. Seaboard Oil Co. v. Britt, 208 Ky. 723, 271 S. W. 1038; Pugh v. Eberlein, 190 Ky. 386, 227 S. W. 467; L. & N. Ry. Co. v. Nickell, 208 Ky. 60, 270 S. W. 487. In the latter case it was held that an instruction which erroneously assumed that both the engineer and fireman discovered the peril of persons on the track was not prejudicial.

Finally, it may be said that a review of the evidence discloses that, with the knowledge at hand, the section foreman in the exercise of reasonable care and judgment should have anticipated that the motortruck was meeting the engine and so controlled its movements as to have avoided coming in collision with the engine, and there is ample evidence indicating that he failed to use ordinary care to avoid that very eventuality.

Finding no error in the record that would authorize a reversal, the judgment is affirmed.

Whole court sitting.