## Combs v. Brewer.

(Decided April 20, 1916.)

## Appeal from Perry Circuit Court.

1. Evidence—Hearsay—School Trustee Election—Statements of Voter.—The statements of a voter that she cannot read and write are mere hearsay, and are not admissible as substantive evidence in a contested school election.

2. Elections—School Trustee—Qualification of Voter—Burden of Proof.—In a contested election for school trustee, he who attacks the qualification of a voter has the burden of proof.

3. Elections—School Trustee—Qualification of Voter—Evidence.—In a contested election for school trustee, evidence considered and held insufficient to show that two of the voters were disqualified.

4. Elections—School Trustee—Sub-sections 5 and 11, section 1596a of the Kentucky Statutes.—Subsections 5 and 11, section 1596a of the Kentucky Statutes, giving to the election commissioners power, in case of a tie vote, to determine who is elected by casting lots, do not apply to school trustee elections.

5. Schools and School Districts—Election—School Trustee—Tie Vote —Vacancy—Power to Fill—Sub-section 4, section 4426a of the Kentucky Statutes.—A tie vote in a school trustee election results in a vacancy, which, under sub-section 4, section 4426a of the Kentucky Statutes, must be filled by appointment by the county board of education.

FAULKNER & FAULKNER for appellant.

W. C. EVERSOLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

At an election for school trustee held in subdistrict No. 9, Education Division No. 5, in Perry county, K. C. Combs received twenty-five votes and Joseph Brewer twenty-one votes. Combs was declared elected. Thereupon Brewer brought this suit contesting the election. On final hearing the trial court adjudged that both contestant and contestee received the same number of votes. Thereupon he declared the election a tie and directed the parties to draw lots for the office. On the draw Brewer won. Combs appeals.

Two grounds are urged for a reversal: (1) That the votes of Malvery Napier and Lou Ellen Crawford were improperly counted for appellée; (2) the court erred in determining the contest by lot.

The vote of Malvery Napier is attacked on the ground that she was unable to read and write. On this question appellant introduced Bob Napier, the husband of Malvery. He testified that he was twenty-nine or thirty years old. He knew his wife for ten years before they were married. He never knew of her attending school, and during that time she never wrote him a letter. He further said: "I never saw her read and write, and she tells me she can't write." To this answer appellee objected. On cross-examination he stated that his wife was not very well; that they had a sick baby which kept her at home. When she was summoned as a witness he asked her what she knew about it. She then wrote "Malvery Napier, Hazard, Kentucky," on a slip of paper and said: "You take that, that is all I can write." It developed on cross-examination that Napier and his wife were on the opposite sides in the election. For appellee, Lacy Combs, the father of Malvery Napier, testified that Malvery could read and write. He further stated that before she married she went to the common schools. He filed with his deposition a sample of his daughter's writing, which he identified as having been written by her.

The vote of Lou Ellen Crawford is attacked on the ground that she was not twenty-one years of age when the election took place. On this question appellant introduced the school census for the year 1915, which showed that Lou Ellen Crawford, who was then Lou Ellen Phipps, was only twenty years of age. Marion Combs, who took the census, stated that Lou Ellen Crawford's mother gave the date of Lou Ellen Phipps' birth as October 2nd, 1896. It also appears that Lou Ellen Phipps was married on March 13th, 1915. In the marriage certificate her age is given as twenty. On the other hand, Lou Ellen Crawford testified that from all the information she could get from her mother and her old kin folks she was twenty-two years of age at the time of the election. Her mother was also introduced and she testified that Lou Ellen was twenty-two years of age. She admits telling the census taker that she could put down Lou Ellen Phipps' age at twenty. On cross-examination she stated that although she could not tell the year Lou Ellen was born, she was confident she was twenty-one years of age.

Clearly, the statements of a voter that she cannot read and write are mere hearsay and are not admissible as

substantive evidence. Omitting these statements of the voter Malvery Napier, we find that on the one hand her husband testifies that he was acquainted with his wife for ten years before they were married. During that time he never knew of her attending school and she never wrote him a letter. He also says that he never saw her read and write. On the contrary, her father testifies that before she was married she attended the common schools and could read and write. In a contested election case, he who attacks the qualifications of a voter has the burden of proof. Since, in this instance, the husband of the voter testified one way, while her father testified to the contrary, we cannot say that appellant maintained the burden of showing that the voter was disqualified, and that the trial court erred in holding that her vote should be counted.

In the case of the voter Lou Ellen Crawford the same rule is to be applied. The fact that the mother stated to the census taker that Lou Ellen Crawford was only twenty years of age, and that a friend of hers, who was present when she was married, stated that she was twenty years of age and this age was put in the marriage certificate, is not sufficient to overcome the positive statement of her mother that, as a matter of fact, she was twenty-two years of age. The trial court did not err, therefore, in holding that Lou Ellen Crawford's vote should be counted.

Appellee contends that certain votes for appellant, other than those which the trial court refused to count, should have been excluded. Without entering into a discussion of the evidence respecting these votes, it is sufficient to say that a careful consideration of the record convinces us that the court did not err in holding that they should be counted for appellant.

We, therefore, agree with the trial court that appellant and appellee each received twenty-one legal votes and that the election, therefore; resulted in a tie.

It remains to consider whether or not the court erred in determining the contest by lot. It is the contention of appellee that the trial court's action is supported by subsections five and eleven, section 1596a of the Kentucky Statutes giving the election commissioner, in case of a tie, the power to determine by lot which of the candidates is elected. In our opinion, however, the statutes relied on

do not apply to school trustee elections. The general election law, embracing the sections aforesaid, went into effect on March 11th, 1898. By an act approved March 17th, 1898, section 4436 of the Kentucky Statutes was amended so as to read as follows:

"Vacancy—How Filled—Power of Superintendent.— If, from failure to qualify according to law, or from any other cause, there be a vacancy in the office of trustee, the county superintendent of the county shall, within ten days, or as soon thereafter as practicable, supply the same by his appointment, in writing, and the trustee so appointed shall hold his office until the end of that term, and until his successor is elected or appointed and qualified. In case of controverted right to the office of trustee, the county superintendent is empowered to recognize a trustee among the contestants until the dispute has been settled. If a trustee-elect shall fail to qualify before the county superintendent on or before the first day of June following his election, or file with him a certificate that he has qualified before another officer, it shall be within the discretion of the county superintendent to declare his place vacant, and to fill same by appointment."

It is clear, we think, that the legislature intended that a vacancy in the office of school trustee should be controlled by the above section and filled as therein provided. Under the above section it was held that where there was a tie vote there was a vacancy that the county superintendent might fill. Hopkins v. Swift, 100 Ky. 14, 37 S. W. 155. Since that time section 4438, *supra*, has been further amended, and any vacancy that may exist in the trusteeship of any school subdivision must be filled by appointment by the county board of education. Subsection 4, section 4426a of the Kentucky Statutes, 1915. Since the tie vote resulted in a vacancy, it follows that the trial court, instead of determining the election by lot, should have declared that a vacancy existed and have referred the matter to the county board of education for action.

Judgment reversed and cause remanded for proceedings consistent with this opinion.