## Prewitt v. Wilson.

(Decided February 2, 1932.)

232

J. B. JOHNSON and L. O. SILER for appellant.

B. B. SNYDER, C. B. UPTON and J. B. CAMPBELL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This contest for the election of a school trustee involves two unusual legal questions as well as issues common to such cases. Wilson received a majority of one vote over Prewitt. The latter's petition of contest was dismissed.

The votes of several women are challenged because of illiteracy. For several years before the adoption of the Nineteenth Amendment to the Constitution of the United States we had in Kentucky a statute permitting women to vote in school elections, but no other, provided they could read and write and possessed the legal qualifications of male voters. Section 4535h-1. The law was regarded as valid, because the Kentucky Constitution, section 155, expressly declares that other provisions limiting the right of suffrage to male citizens shall not apply to the elections of school trustees, and gives the Legislature plenary power in respect thereto. Crook v. Bartlett, 155 Ky. 305, 159 S. W. 826. The question

before us is whether this statute in its fullness still stands.

The Nineteenth Amendment, which was proclaimed on August 26, 1920, did not confer, nor purport to confer, the right of suffrage upon women, although that is a popular, but erroneous, conception. It only prohibits discrimination against them on account of their sex in the exercise of that right of citizenship. It is in this language:

> "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex."

The General Assembly of Kentucky, at its 1920 session, apparently in anticipation of the adoption of the amendment, provided that women who possessed the same qualifications as men should be entitled and allowed to vote in all elections of electors of President and Vice President, separate ballots to be provided for them. Chapter 101, Acts of 1920. At the same session it passed an act providing for the participation of women in subsequent primary elections "in which women are entitled to vote under State law, or under the provisions of the Federal Constitutional Amendment, giving women the right to vote." And in the same act it placed the duty upon the county court clerk to provide additional ballots in all elections "in which women are allowed to vote under State law, or under the provisions of the Federal Constitution." Chapter 64, Acts of 1920. These laws are now designated as section 1596b-1, et seq., Statutes. It is to be noted that the right to vote in general elections, except for presidential elections, has not been expressly conferred upon women by the Kentucky Legislature. Nor has section 4535h-1, carrying the illiteracy qualification, or any other statute pertaining to elections, been expressly repealed. Of historical interest is the fact that in 1923 a proposed amendment to the Kentucky Constitution extending the privilege of voting to women was defeated at the polls.

The Constitution of the United States with its amendments is the supreme law of the land. Before it, all conflicting constitutional and statutory laws must yield and become ineffective. As its preamble declares, it was ordained and established by the people, and by adopting it they acquiesced in the restrictions and rights

which it created or rendered possible by its provisions. In many ways it also operates directly on the states in their corporate or sovereign capacity. Martin v. Hunter, 1 Wheat. 304, 4 Law Ed. 97. It controls the Constitutions and the laws of the respective states, and cannot be controlled by them. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579. In its sphere it binds every forum, whether it derives its authority from a state or from the United States. Cook v. Moffat, 5 How. 295, 12 L. Ed. 159. Judicial and legislative acts of a state hostile in their purpose or mode of enforcement to the authority of the federal government, or impairing the rights of citizens under the Constitution of the United States, are invalid and void. Taylor v. Thomas, 22 Wall. 479, 22 L. Ed. 789.

The validity of the Nineteenth Amendment was sustained in Leser v. Garnett, 258 U. S. 130, 42 S. Ct. 217, 66 L. Ed. 505. It is in the exact language of the Fifteenth Amendment, with the substitution of the word ''sex'' for the words ''race, color or previous condition of servitude,'' which, during its testing time, was consistently and uniformly held not to confer the right to vote upon the negro, but having the effect ex proprio vigore of striking from the laws of all states the word ''white.'' Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567. Upon the same reasoning and following those authorities, the courts before whom the Nineteenth Amendment has come for interpretation have given it the same construction, and held that it is self-executing and became automatically operative by its inherent force. Under it women are politically emancipated and are not and may not be disqualified from voting on account of being women. Brown v. City of Atlanta, 152 Ga. 283, 109 S. E. 606; Foster v. City of College Park, 155 Ga. 174, 117 S. E. 84; Graves v. Eubank, 205 Ala. 174, 87 So. 587; State v. Walker, 192 Iowa 823, 185 N. W. 619; State v. James, 96 N. J. Law, 132, 114 A. 553, 16 A. L. R. 1141; Opinion of the Justices on Women as Officers, 119 Me. 603, 113 A. 614; Opinion of Justices, 240 Mass. 601, 135 N. E. 173; State v. Mittle, 120 S. C. 526, 113 S. E. 335, certiorari denied in 260 U. S. 705, 744, 43 S. Ct. 164, 67 L. Ed. 473; People ex rel. Murray v. Holmes, 341 Ill 24, 173 N. E. 145, 71 A. L. R. 1327. Therefore all of the laws of this commonwealth which denied or abridged the right of suffrage to women have yielded to the superior mandate, and it must be held that they have constructively,

though very effectually, 'been repealed or rendered, nugatory.

But it is said by the appellant that the terms of this statute granting a limited right of suffrage to women in school elections is not discriminatory because of sex, but merely sets up a test of literacy. The argument is a specious one, for male voters are not required to meet the same test. Its limitation only applies to women, and it is therefore discriminatory against them. Illiterate women, no less than illiterate men, may exercise the right of suffrage in Kentucky, and such votes cast for the appellee were properly counted.

2. Two votes for the appellee were challenged because cast by men who had been convicted of a felony and whose forfeited civil rights had not been restored, and who were therefore ineligible to vote. Section 145, Constitution of Kentucky; Ky. Stats., sec. 1439. The evidence sustaining the charges consisted of orders of the circuit court alike in form. Each order recited that the defendant announced ready for trial; that the jury was sworn to try him, and, after hearing the testimony and receiving the instructions of the court, retired for deliberation, and afterwards returned with a verdict, which is set out in haec verba finding the defendant guilty as charged in the indictment, and fixing his punishment at one year in the state penitentiary. The order concludes: "It is, therefore, ordered by the court that the defendant (naming him), be taken by the sheriff of Whitley County to the jail of Whitley County and there safely keep (sic) until further orders of this court." Neither of these orders adjudges the defendant guilty of the crime charged. It simply records the verdict and remands the defendant to jail to wait the further orders of the court. There is no proof that the court ever rendered judgment on the verdict. For aught that the record shows, it may have been set aside and the defendant finally acquitted. The verdict of a jury under such circumstances cannot be regarded as a conviction, within the meaning of the statutes' disqualification. A verdict is but the basis of a judgment which carries it into effect. Chapman v. Commonwealth, 199 Ky. 204, 250 S. W. 844. There must have been a final judgment pronounced. Dial v. Commonwealth, 142 Ky. 32, 133 S. W. 976; Commonwealth v. Gresham, 198 Ky. 451, 248 S. W. 1038. Compare Divine v. Commonwealth, 240 Ky. 302, 42 S. W.

(2d) 330. As to one of the men, the contestant testified that he had been sent to the penitentiary, although the facts upon which he made the statement were not given; and, as to the other one, his mother stated that he had served a term in prison. The record of a final judgment of conviction is the best evidence and is controlling. In the absence of its production it must be held that neither of these voters was properly proven to have been disqualified on this ground.

While the school census showed that one of them was not 21 years of age on the day of the election, his mother testified that he was that old. The school census is not a very acceptable class of evidence, and has been held incompetent to prove the age of a voter. Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257, 24 Ky. Law Rep. 1099, 25 Ky. Law Rep. 435. See, also, Combs v. Brewer, 169 Ky. 571, 184 S. W. 892; Hunley v. Commonwealth, 217 Ky. 675, 290 S. W. 511. It was at most a contradiction of the evidence of the mother, and the chancellor accepted her evidence in lieu of the census, and we cannot say that he should have done otherwise.

Four votes are challenged because of nonresidency in the precinct the prescribed time. We have recently had occasion to review the law pertaining to this qualification in school trustees elections, and the statutes and rules need not be repeated. See Matney v. Elswick, 242 Ky. 183, 45 S. W. (2d) 1046, and Thompson v. Emmert, 242 Ky. 415, 46 S. W. (2d) 502 (opinion rendered January 26th). Reference may also be made to Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786.

It is contended that the votes of Owen Amburn and his wife should be eliminated from appellee's total. The evidence showed Amburn had moved into Corbin, but still in the county, for work during the summer, and the removal of his wife and himself back to the precinct was pretty close to sixty days before the election; the evidence as to the exact day being conflicting. We think they are to be regarded as having been only temporarily absent from the district.

M. C. Ponder, a native of that section of the state, testified his family abandoned him in Ohio some eighteen months before the election, and he then returned to Laurel county. In October, 1930, he took up his abode with the Rev. Wyatt, from whom he had gotten a mule in consideration of fifty days' work. At the expiration of

that period he continued in his home, although spending a few days here and there with kinsfolk. He had all his meager belongings there, and claimed that was his permanent home. Aunt Jane Ellison, an elderly widow, claimed her fixed home with a daughter residing within the district, although she spent part of her time with other children. We regard both of these as valid voters.

The result is that the contestant did not prove that the contestee received a single illegal vote. It is therefore not necessary to consider the counterclaim that the contestant's total should be reduced by reason of certain illegal votes cast for him.

The judgment is affirmed.