# Wolff et al. v. Employers Fire Ins. Co.

May 3, 1940.

William H. Field, Judge.

William Alpha Hubbard for appellants.

O'Neal & O'Neal and Joseph S. Lawton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to July 1, 1924, the appellants and plaintiffs below, H. C. and R. C. Wolff, in the partnership name of Ralph Wolff and Sons, were engaged in manufacturing candy in a building at 418 East Market Street in the city of Louisville, Kentucky. On the date indicated they procured from the appellee and defendant below—a fire insurance company—a policy on the contents of their occupied building—exclusive of certain articles immaterial to this controversy—in the sum of $3,000 whereby defendant agreed to pay the amount of its policy in case

of destruction of the insured property by fire, or to the extent of its proportionate part thereof, with other insurance companies issuing similar policies for different amounts on the same property. Defendant's policy was to run for one year, making it expire on July 1, 1925; but on December 12, 1924, in the night-time, a fire occurred destroying the insured property, or the larger part of it. Plaintiffs made proof of their loss and demanded of defendant payment of the amount of its policy, which it declined to do for various reasons, chief among which was that it claimed that they maliciously, purposely, intentionally and feloniously burned the property—which fact, if true, under a provision of the policy relieved the Company from the duty to pay the loss, but which also would have relieved them in the absence of such a stipulation, on the ground that it would be against public policy to remunerate plaintiffs for their loss occasioned by their own wilful wrong.

The other companies that issued policies on the same property also declined to pay, and suits were instituted by plaintiffs against them also. The other insurers besides defendant interposed various defenses to the separate actions against them, and which resulted in judgments and the filing of two appeals in this court by the instant appellants—one being styled Wolff et al. v. Niagara Fire Insurance Company et al., 236 Ky. 1, 32 S. W. (2d) 548, and the other styled Ralph Wolff & Sons v. New Zealand Insurance Company and Detroit Fire & Marine Insurance Company, 248 Ky. 304, 58 S. W. (2d) 623; but in neither of those appeals was the question raised or attempted to be disposed of that is involved in this instant appeal.

In January, 1925, following the fire, which occurred on December 12, 1924, the grand jury of Jefferson county indicted plaintiffs, in which they were accused of wilfully and feloniously burning the insured property. They were tried under that indictment and convicted, followed by their appeal prosecuted to this court, resulting in our affirmance of the judgment of conviction in the case of H. C. and Raymond Wolff v. Commonwealth, 214 Ky. 544, 283 S. W. 385. Following that affirmance plaintiffs herein and defendants in that convicting judgment served their sentences; but before the judgment of conviction became final and before they

commenced to serve their term, they had filed this and the other actions referred to. Nothing, however, was done by the instant defendant in defense of this action against it, except to demur to the petition prior to the incarceration of plaintiffs in the penitentiary pursuant to their conviction. The case lay dormant until 1928, when some motions and, perhaps, pleadings were filed and then another respite of about three years followed, after which other motions and steps were taken looking to a preparation of the cause, but no answer to the merits was filed in the action until February 17, 1934.

Its first paragraph was a denial of some of the material averments of the petition, and the second one interposed the defense of intentional and felonious burning of the insured property, which was averred in general language, and which was attempted to be fortified by pleading the judgment of conviction in the criminal prosecution, which was rendered in December, 1925, and that judgment was referred to in substantiation of the defense averred in that paragraph of the answer. Plaintiffs filed a demurrer to it, which the court eventually carried back to the petition and sustained it to the latter pleading after first setting aside its previous order overruling a like demurrer in an earlier part of the checkered history of the case. Later amendments to the petition were filed, but demurrers to them were sustained resulting in the petition being dismissed, to reverse which plaintiffs prosecute this appeal.

The practice pursued is clearly irregular in some respects. To begin with, if the judgment of conviction constitutes a bar to the prosecution of this action probably it was not absolutely essential that it be expressly pleaded, since it most likely would be admissible as evidence in substantiation or proof of the general averment that plaintiffs intentionally and feloniously burned the insured property. Another departure from the usual practice was and is that the court, instead of acting upon the demurrer filed to the second paragraph of the answer, declined to do so, but carried the demurrer back to the petition, and, after setting aside its previous contrary order, sustained the demurrer to that pleading on the ground, we are told, that the court took judicial knowledge of the records in all branches of the Jefferson circuit court, and being of the opinion that the crim-

inal convicting judgment should be held to be a bar to the prosecution of the civil action on the insurance policy, it took knowledge of the conviction and sustained the demurrer to the petition. Whether that practice should or should not be approved will not be discussed or passed upon by us, since all parties agree that the sole questions on this appeal are—(1) whether or not the judgment of conviction which became final should be given the effect of a conclusive bar to the prosecution of this civil action—the material facts in each case being the same, and (2) if the judgment should not be given the effect of a conclusive res adjudicata bar, then is it admissible as a circumstantial fact in the case, to be weighed and determined by the jury in passing upon the merits of the specific defense? Only those two questions will, therefore, be discussed or determined in this opinion, considering them in the order named.

Before addressing ourselves to the merits of either of them we deem it proper to say that the learned trial judge filed an opinion consisting of some thirty-odd pages, in which he discussed and approved three reasons why the criminal conviction should be held as a conclusive bar to the maintenance of this action. They were: (a) That the universally prevailing rule—until a short while before the filing of the court's opinion—erroneously assumed that the essential elements to constitute a res adjudicata estoppel did not exist in the circumstances presented, when in truth and in fact they did exist as the court attempted to point out; (b) that plaintiffs in this civil action could not and should not be permitted to attack the criminal judgment convicting them —and to which they were parties—by this collateral assault made on it, and (c) that it is against public policy to hold that a judgment of conviction in the trial of a criminal prosecution should not be conclusive evidence of the facts upon which it rests, as found by the jury, and which conclusion was reached in the light of the safe-guarding provisions thrown around defendants in such prosecutions so as to guarantee, so far as humanly possible, no miscarriage of justice in such investigations. Chiefly, those provisions are, unanimously returned verdicts, and required convincing of each member of the jury beyond a reasonable doubt as to the defendant's guilt. Having so briefly outlined the determinations, and the reasons therefor of the trial judge,

we will now proceed to determine questions (1) and (2) supra.

1. In the discussion of question (1) as disposed of by reason (a), we do not deem it necessary to cite authorities in substantiation of the almost universal rule—and which no one disputes—to the effect that a res adjudicata estoppel is not available unless the parties to the judgment relied on as such were the same, or that they stand in privity with those who were actual parties to the first judgment. The rule is stated by text writers and courts in different language, but the substance of it is as we have framed it. If no such privity exists and the parties are not the same, then no res judicata estoppel is established. The parties to the criminal prosecution here involved were the "Commonwealth of Kentucky," and the plaintiffs in this action, who were the defendants in the indictment. Under all definitions of the requisite privity required to produce the estoppel it is declared by both courts and text writers that each member of a class or group of parties or individuals for and on behalf of whom a litigation is prosecuted or defended in the name of one who possesses the authority to so appear for all members of the group will be bound by the judgment rendered, because they occupy a privity relationship to the nominal litigant in the cause wherein the res judicata judgment was obtained, and which was done by such litigant for the use and benefit of all members of the group. Thus in the case of Stone v. Winn, 165 Ky. 9, 176 S. W. 933, it was held by this court that a judgment in a case involving a public question wherein a county is a party is binding on each citizen and tax payer of the county, if the question is one of a public nature, and which conclusion was reached because the county under the set-up of our form of government had the right to litigate such questions for the use and benefit of its inhabitants, and that the latter stood in privity with the county in the prosecution of such litigations. The trial court, therefore, reasoned that in framing our Constitution the aggregate group of persons within the confines of the state delegated to and created a governmental unit to be named and styled "The Commonwealth of Kentucky," and to it was lodged not only the right but the duty to prosecute all persons guilty of infraction of the criminal laws—both for the benefit and protection of society in the aggregate and also for the

protection of the individual rights of each citizen in the protection of his personal and property rights. Therefore, as the court reasoned, the element of privity was not wanting in the circumstances, although it had been determined to the contrary by all courts until some few years prior to the court's ruling, including the domestic one of Liverpool & London & Globe Insurance Company v. Wright, 166 Ky. 159, 179 S. W. 49.

It must be admitted that the argument advanced for the elimination of the reason heretofore given for denying the res adjudicata estoppel effect of a criminal conviction when attempted to be relied on in a later civil action involving the same facts, is quite persuasive, since it attempts to supply the heretofore denied element of the estoppel, i. e., necessary privity. This Court, however, as presently constituted, though acknowledging the force of argument (a) supra, does not see its way clear to apply that reasoning in toto, and especially so when such an approval would require, as we conclude, the estoppel to prevail when the defendant in the indictment was acquitted, as well as when he was convicted, there being no reason pointed out to deny the mutuality of the estoppel, but which we conceive may be done only by making an exception in such a case to the general rule of mutuality necessary for the creation of estoppels.

Reason (b) is attempted to be sustained under the general doctrine that a judgment rendered by a court having jurisdiction of the subject matter and of the parties, howsoever erroneous, may not be collaterally attacked. But the question is: Does that doctrine apply except as between the parties to the attacked judgment? If it does have universal application then every judgment whether rendered in a criminal prosecution or a civil cause could be pleaded in bar of another later action involving the same facts, either in favor of or as against one of the litigants in the later action who was a party to the first one and which would have the effect to entirely uproot the foundation elements upon which the res judicata estoppel rests. If, however, reason (a) supra should be accepted as sound, then reason (b) would likewise be sound—not because it antagonized the rule against collateral attacks, but because the necessary privity existed so as to create the estoppel.

Reason (c) is bottomed upon the two theories: (x)

that under the well known maxim "no one should profit by his own wrong," and (y) the conclusion of the court, after a more or less extensive review of the history of litigation in organized governments, that the law should not be administered so as to render antagonistic answers to the same litigated question and thereby destroy the harmony of its operation, which is its own due process. The court therefore concluded that: "The logic of history, the sovereignty of the State with its appurtenant obligations, the constitutional provisions governing criminal investigation, the dictates of reason, all converge to the conclusion that public policy demands that, aside from the technical doctrine res judicata, a criminal judgment have, in and of itself, universally conclusive force as to all matters determined by it." In connection therewith it dwelt upon the adverse effect upon and criticisms by the masses of the people, outside of the profession, and who are unfamiliar with the technicalities of law, when it is held by the courts as a correct principle of law that one convicted of a crime may nevertheless benefit thereby and thus reap the fruits of his own wrong. Such inequitable results beget disrespect for the courts which it was concluded by the learned trial judge is against public policy to permit. The soundness of the court's conclusion that the res judicata estoppel should be upheld on the ground of public policy—though the grounds upon which it is bottomed possesses some weight—does not do so to the extent of convincing us that the court was correct in its ultimate conclusion on this reason in support of the judgment. It follows that we are not yet prepared to align ourselves with the Virginia court in the Heller case, infra, by holding that the judgment of conviction of plaintiffs herein constitutes a conclusive bar to their right to maintain this civil action based upon the same facts involved in their prosecution; from which it follows that the court erred in its contrary conclusion and dismissing the petition—and which brings us to a consideration of question (2) supra.

The courts of England for a long time, beginning with the case of Duchess of Kingston's Case, 2 Smith's Leading Cases, 13th Edition, 644, adhered to the doctrine of all other courts denying the bar, but in the case of Crippen, L. R. [1911] Prob., Eng., 108, 80 L. J. Prob., N. S., 47, 104 L. T., N. S., 224, 27 Times L. R. 258, 55

Sol. Jo. 273, the same courts modified the rule and held that a judgment of conviction might be introduced at the trial of the later civil action as a relevant fact having a tendency to establish the same fact in issue in later civil litigations involved. But we have been unable to find any case holding that the judgment in the criminal prosecution could even have that effect, unless it was one of conviction. Following the decision of the later English case supra, the Court of Appeals of New York had before it, in the case of Schindler v. Royal Insurance Company, 258 N. Y. 310, 179 N. E. 711, 80 A. L. R. 1142, decided February 9, 1932, the question as to the sufficiency of the same character of bar here relied on, involving, of course, what, if any, effect should be given to the prior pleaded convicting judgment, and that court, through Judge Pound as the writer of the opinion, declined to hold the prior conviction as conclusive in the later civil action but sustained the contention (contrary to the rule as previously universally adjudicated) that the convicting judgment was admissible as a circumstance to establish the offense of feloniously destroying the insured property by wilfully burning it. The entire court coincided with that conclusion—the members being Chief Justice Cardozo, and Justices Crane, Lehman, Kellogg, O'Brien and Hubbs—the latter dissenting only because the court rejected the conclusion of the Virginia Supreme Court in the case of Eagle, Star & British Dominions Insurance Company v. Heller, 149 Va. 82, 140 S. E. 314, 57 A. L. R. 490, that a former judgment of conviction in a criminal prosecution should constitute a conclusive bar against the convicted defendant therein in a later civil action involving the same facts although the opposing litigant in the civil action was not a party co nomine to the criminal prosecution. The Virginia case, so far as we have been able to find—as well as the trial court was able to find—is the only one which applies the res adjudicata doctrine as a conclusive defense in the circumstances similar to those in this case.

In about one year after the rendition of the New York opinion the Supreme Court of Alabama in the case of Fidelity-Phenix Fire Insurance Company of New York v. Murphy, 226 Ala. 226, 146 So. 387, had presented to it the identical questions presented in the New York case, and which were determined in precisely the same manner as was done by the New York court.

The Virginia court in the Heller case necessarily held that the judgment of conviction was admissible as evidence at the trial of the later and subsequent civil action involving the same facts. We have seen that the English courts have relaxed the rule first announced by them to the extent of permitting the introduction of the criminal conviction in the later civil action as a circumstance tending to establish the principal fact or facts constituting the subject matter of inquiry. Likewise have the courts of New York and Alabama reached the same conclusion. The New York court, in its opinion supra—after giving a resume of the condition of the law regarding both questions (1) and (2) supra—concludes its opinion by saying [258 N. Y. 310, 179 N. E. 712, 80 A. L. R. 1142]: "It would be an unedifying spectacle if the courts should now apply the strict rule which excluded all reference to the judgment of conviction in the civil action as evidence tending to establish the material facts. We shall, however, continue to hold that it is not effective as a plea in bar." The Alabama court in its opinion supra reached the same conclusion following a review of the condition of the law as theretofore determined by the various courts, and concludes with this language [226 Ala. 226, 146 So. 392]: "We are committed to the doctrine of the admission of such evidence [judgments of conviction in criminal prosecutions] as a circumstance tending to show the commission of the crime (Page v. Skinner [220 Ala. 302, 125 So. 36], supra), and reaffirm it as the most logical theory."

Mr. Webster defines "Circumstantial Evidence" in law to be: "Evidence that tends to prove a fact in issue by proving other events or circumstances which, according to the common experience of mankind, are usually or always attended by the fact in issue, and therefore affords a basis for a reasonable inference by the jury or court of the occurrence of the fact in issue." An analogous practice is recognized by this and all other courts so far as we have been able to discover, in civil actions for false arrests and malicious prosecution. In such actions probable cause on the part of the perpetrator of the tort sued for is a complete defense to the action, and it is universally held that a conviction or an acquittal of the plaintiff in such an action is prima facie evidence in his behalf when acquitted of the maliciously

preferred charge, but if convicted, then the judgment of conviction is prima facie evidence in behalf of the defendant in such an action. The latest domestic case so holding, and in which other prior ones are referred to, is Union Bank & Trust Company v. Edwards, 281 Ky. 693, 137 S. W. (2d) 344. The practice so universally approved and applied in such cases, it will be observed, does not go to the extent of holding that the first judgment (whether in favor of plaintiff or against him) is conclusive in the later civil action for the malicious wrong; but the opinions nevertheless approve the rule permitting the introduction of the result of the first trial, and when done the burden is cast on the opposing litigant to overcome with evidence the prima facie effect of the judgment rendered at such hearings. That rule of practice, it occurs to us, is almost completely analogous to the contention of defendant herein as involved in question (2) supra. In fact, the analogy is so close and so completely parallel that we are unable to draw any distinction between the rule as applied in malicious prosecution cases and in the facts involved in this action.

But, independently of the rulings of the English, the New York, the Alabama and the Virginia courts on the direct and specific question involved—plus the analogy of the approved rule referred to in malicious prosecution actions—we are convinced that the judgment of conviction as well as the judgment of acquittal are each admissible circumstantial facts available to the party in whose favor they are, in a later civil action involving the same facts as were determined in the criminal prosecution and which we are convinced is amply supported by logic and reason and should be approved even in the absence of any specific precedent therefor. That statement is based upon acknowledged practice daily and universally encountered in the courthouses of the country and with which appellate courts likewise constantly deal. It consists in questions asked the witnesses to which opposing counsel objects on the ground of irrelevancy; the court is thereby called upon to determine whether or not the fact sought to be proved by the question propounded is one tending to prove the principal fact involved in the case. Such is the exact situation presented when defendant offers the judgment convicting plaintiffs at the trial of the indictment against them, and it is the question now presented to us for deter-

mination. With all of the known safeguards (some of which are referred to supra) thrown around a defendant in a criminal prosecution, why, may we ask, should a judgment convicting a litigant of a crime not create a circumstance tending to prove his guilt in a later civil action involving the same facts? We are unable to perceive the soundness of a contrary rule although it may be approved by a very considerable majority of the courts, since that fact (the majority of courts) is not conclusive of the determination of the question, as a review of the history of the law most thoroughly demonstrates, one illustration of which we will recite and then conclude this already too lengthy opinion.

In the case of Paducah Lumber Company v. Paducah Water Supply Company, 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536, this court held that a citizen of a municipality which had granted a franchise to a water company to operate a water system in the city, was one of the group for and on whose behalf the franchise contract was made and who was therefore given the right to maintain an action for a violation of that contract, and might sue to recover damages for the failure of the water company to furnish the stipulated amount of pressure to extinguish a fire whereby his property was destroyed, but which could and would have been extinguished had the contract been observed. At the time of the rendition of that opinion no other Anglo Saxon court had so held. On the contrary many of them had rendered opinions directly to the contrary throughout a period of lengthy duration. Subsequent to the rendition of the opinion in that case the North Carolina Supreme Court followed it in the case of Gorrell v. Greensboro Water Supply Company, 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598, in which that court said in substance that authorities are to be weighed, not counted, and that line should be adopted which is most consonant with justice and the reason of the thing. That holding has since been adopted by the courts generally, including those who had theretofore ruled to the contrary and in which later determinations the former contrary opinions were expressly overruled. We therefore conclude that question (2) supra should be answered in the affirmative by permitting the introduction of the judgment of plaintiffs' conviction in the trial of this case as a relevant circum-

stance to be considered by the jury in determining whether or not they wilfully destroyed their insured property, which that judgment determined they did. To that extent our Wright opinion supra is overruled, as well as all other opinions, if any, that may have followed it in rejecting the introduction of the criminal judgment at the trial of the later civil action.

Wherefore, for the reasons stated, the judgment is reversed because the court erroneously held that the judgment of conviction was a bar to this action, with directions to overrule the demurrer to the petition and for other proceedings consistent with this opinion.

The whole court sitting.