## Moore et al. v. Commonwealth.

Jan. 29, 1943.

56

Hiram H. Owens for appellant.

Hubert Meredith, Attorney General, and J. B. Johnson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

In this suit, filed by the Commonwealth's Attorney of the district against Jim Moore and his wife, Bessie Moore, the court adjudged their house and lot forfeited as a nuisance because the property had been used by and with the knowledge of the owners for "the purpose of unlawfully selling or * * * possessing intoxicating liquors in dry territory." KRS 242.310 et seq., sec. 2554c-24, Ky. Stats.

The grounds of appeal are that the statute is unconstitutional and the evidence does not support the judgment.

The provision of the statute has been specifically held constitutional, Froedge v. Commonwealth, 289 Ky. 168, 158 S. W. (2d) 426, as was its counterpart in the former general prohibition enforcement act. Rickman v. Commonwealth, 204 Ky. 848, 265 S. W. 452. Rigorous though such laws be, they are sustained as being but the abatement of nuisances. Their genesis seems to be an early enactment of similar provisions in the United States Internal Revenue Laws. See Dobbins' Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637; and notes 10 A. L. R. 1591. The particular attack in this case on the constitutionality of the provision of the Local Option Law is that it violates Article I, Sec. 9, of the Constitution of the United States, forbidding the passage of a "bill of Attainder," and of Sec. 20 of the Constitution of Kentucky, declaring:

"No person shall be attained of treason or felony by the General Assembly, and no attainder

shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth.''

In response to the same argument as to the invalidity of a similar statute, the Supreme Court of Alabama stated that a like constitutional provision and another forbidding the imposition of excessive fines or cruel and unusual punishment ''have nothing to do with the case, for they relate to legislative punishment, or legislation for the punishment, of criminal or supposed criminal offenses, whereas that part of the statute to which we have referred is justified on the ground that it is a provision for the abatement of nuisances.'' House and Lot v. State ex rel. Patterson, 204 Ala. 108, 85 So. 382, 10 A. L. R. 1589. Our Act is based upon the same theory. See Rickman v. Commonwealth, supra.

The appellant, Jim Moore, had been previously convicted on an indictment of maintaining a common nuisance at the place by selling and permitting liquor to be kept and sold there. His wife, jointly indicted with him, had been acquitted. The result of the criminal prosecution, though competent as evidence in the civil action, is not conclusive. Wolff v. Employers Fire Ins. Co., 282 Ky. 824, 140 S. W. (2d) 640, 130 A. L. R. 682. Title to the property was in the defendants jointly. Mrs. Moore undertook to prove that her money, $550, had paid for the property and that her husband's name had been placed in the deed as one of the grantees without her knowledge or consent. If her claim should be acceded to, she could not be relieved from liability under the statute if she knowingly or intentionally permitted her husband or others to use the property for the purposes described. The evidence of close neighbors was that taxicabs and private automobiles, in unusual numbers, sometimes during every day and night, stopped in front of or near the cottage; that sometimes persons would get out of them and go into the house, and sometimes Moore would take liquor out to them. Many pedestrians also went there. Most of them had reputations of drinking and dealing in whiskey. They testified that Jim Moore kept liquor in the house in bottles and jars and also along his neighbors' fences. He had declared his purpose to sell liquor and that ''they couldn't make him stop it.'' Mrs. Moore's sister and her husband, Arthur Davis, lived for a while with them and they were fre-

quently seen delivering liquor in the same manner. Those two and Moore were seen bottling liquor in a little garage in the yard. All three of them had reputations of being bootleggers and the premises had the reputation of being where liquor was kept and sold. Officers, under a search warrant, had found whiskey in the house and evidences of greater quantities having been there but dumped into a wash tub of water.

Mrs. Moore was living there all the time. She is described as a quiet, meek little woman, in ill health and of subnormal mentality, wholly dominated by her husband. Her parents were law-abiding, high-type citizens, and personally she is said to be a good woman and bears a good reputation. Her reputation is that she had not been engaged in handling liquor. Moore testified that: "If there was any whiskey sold on the premises my wife did not know it"; and: "Every time I come in acting like I was drinking or smelt like it she would raise all kind of Cain about it and I would make her hush about it the best I could." He admitted having handled liquor on the premises, but stated he kept it a secret from his wife. She testified she did not know of her husband or anybody else ever having sold any whiskey on her property, and if it was done it was without her consent. Other than this denial, which is contradicted by the activities described, plainly visible by the neighbors, and the fact that this is a small cottage, the defense offered for Mrs. Moore is only that which is calculated to create sympathy for her. She is entitled to that, for it is unfortunate that her home must be forfeited for the persistent, criminal conduct of her husband. She must, however, bear the consequences of having subjected herself and her property, whether a joint or entire interest, to a lawless husband rather than having sought refuge and protection at the hands of the law enforcement officers.

The evidence fully sustains the judgment and it is affirmed.