## WITT v. LUNSFORD.

Court of Appeals of Kentucky.

June 23, 1954.

Rehearing Denied Oct. 8, 1954.

Lewis & Weaver, London, for appellant.

Shumate & Shumate, Irvine and Richmond, Charles R. Coy, Richmond, for appellee.

MOREMEN, Justice.

Appellee, William Lunsford, recovered damages from appellant, Sheridan Witt, in the sum of $5,000 for injuries he had received as a result of being shot by appellant.

On March 26, 1948, William Lunsford, a farmer about 59 years of age, was working a tobacco bed. He quit work and went to the place of his brother, Charley Lunsford, to obtain two sacks of fertilizer. When he reached his brother's place, he saw appellant, Sheridan Witt, and his son, Otis Witt. He started home and was walking along the edge of the Piney Grove Road when a truck being operated by Otis Witt approached him. When it was near, the truck slowed down and Sheridan Witt, who was sitting at the right of the driver, opened the door of the truck, thrust out a single-barrel shotgun, and shouted, "God damn you, I am going to kill you." Lunsford, sensing that appellant

was going to shoot him, threw his right hand up in front of his face. The shotgun blast was received by him just below his wrist and his hand was left dangling by a small portion of flesh. It was later severed entirely by a surgeon. The missiles also struck appellee about his cheek, broke his jaw and destroyed some of his teeth. The appellant, Sheridan Witt, in an attempt to justify his action, related a story in which he described an earlier encounter which he had had with Evan Singleton and stated that when he met appellee the second time he was with or near Evan Singleton and appellee came around on his side of the truck with a rock in his hand and he shot in order to keep him from throwing the rock at him. However, the jury accepted the version of the encounter offered by appellee and witnesses introduced in his behalf. The case was properly one requiring submission to the jury.

On this appeal, appellant urges reversal of the judgment because of (a) the misconduct of a juror; (b) erroneous instructions offered; (c) the admission of incompetent evidence over objection of appellant.

On voir dire examination, the panel was asked if anyone was related to either the appellant or the appellee by blood or marriage. Hallie Spurlock, who served on the petty jury, failed to disclose that her first cousin had married appellee's nephew. After the trial, appellant made this fact one of his grounds for a new trial and the Honorable Ray C. Lewis, Judge of the Jackson Circuit Court, heard proof concerning it in open court. Hallie Spurlock testified that she did not know of her relationship by marriage to the appellee at the time she qualified and served as a juror. The trial court accepted her testimony and refused to find it sufficient grounds for setting aside the verdict. In this action, we think he was correct. Remote kinship by marriage about which one is unaware has been held to be insufficient grounds for setting aside a verdict in a number of cases, a few of them being Templin v. Cornelius, 243 Ky. 719, 49 S.W.2d 550; Miracle v. Commonwealth, 148 Ky. 453, 146 S.W. 1136; Chesapeake &

Ohio Ry. Co. v. Jesse, 159 Ky. 450, 167 S.W. 407; Rice's Ex'rs v. Wyatt, 76 S.W. 1087, 25 Ky.Law Rep. 1060; Northcutt v. Juett, 36 S.W. 179, 18 Ky.Law Rep. 327.

Appellant also complains that this juror, during a recess of court, was seen talking to Sophia Turner and Albert Rose, each of whom had been prospective jurors and had been excused by the appellant, and that she thereby violated the admonition of the court to the jury about talking to other persons. We have not found in the transcript of evidence the admonition given by the court, but both parties seem to agree that admonitions were given. We assume they were in the form usually used and that court did not prohibit the jurors from speaking to anyone, but only admonished the jury not to discuss the case with anyone. The affidavit that relates the incident merely states that Hallie Spurlock talked to these people. It was stated that the affiants did not know what these people talked about. We will not infer that their conversation was improper.

Appellant criticizes the instructions given because the second instruction permitted the jury to find damages for loss of power to earn money and insists this was erroneous because appellee failed to show that he earned money before his injury.

In Gretton v. Duncan, 238 Ky. 554, 38 S.W.2d 448, 450, it was said:

"While in an action for personal injuries evidence of earning power is always admissible, neither allegation nor proof of specific pecuniary loss is indispensable to a recovery. Permanent impairment of earning power is merely the test to be applied by the jury in determining the compensation to be awarded for permanent injury, and, where permanent injury is alleged and shown, permanent impairment of power to earn money follows as a matter of course. To what extent is a question for the jury to be determined by the application of their common knowledge and experience to the facts and circumstances of the case. Cumberland Tele-

 

phone & Telegraph Co. v. Overfield, 127 Ky. 548, 106 S.W. 242, 32 Ky.Law Rep. 421."

Finally appellant complains that it was error for the court to admit testimony to the effect that he had been convicted of a felony, arising out of the circumstances which were described above, and insists that this testimony was incompetent because the best evidence was proof of the final judgment of conviction from the court's record. We have held that ordinarily the record of final conviction constitutes the best evidence. Prewitt v. Wilson, 242 Ky. 231, 46 S.W.2d 90.

However, the case at bar involves a different procedure. Section 597 of the Civil Code of Practice provides:

"A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony."

It may be noted that the above quoted section grants an option of procedure. The fact of conviction may be proved by either the examination of a witness or the record of the judgment. In the instant case, upon examination, appellant admitted that he had been convicted of a felony. The questions which elicited this fact were permitted under the terms of the code and under a practice established by long usage. It may be noted in this connection that the evidence produced was of more substantive value than merely to serve the purpose of attacking the credibility of the witnesses. In Beavin v. Commonwealth, 308 Ky. 522, 215 S.W.2d 119, 121, we said:

"Under the circumstances we think our ruling in the case of Wolff v. Employers Fire Ins. Co., 282 Ky. 824, 140

S.W.2d 640, 130 A.L.R. 682, is applicable here. In that case it was said that evidence of a conviction in a criminal prosecution is competent though not conclusive in a subsequent civil action. That rule was followed in Moore v. Commonwealth, 293 Ky. 55, 168 S.W.2d 342."

In any event, the purpose of the best evidence rule is to obtain the most definite and certain truth. We believe the admission by appellant against his interest that he had been convicted, is of as high quality as that which would have been received had an attested copy of the judgment been introduced. The fact that appellant's admissions were corroborated by others in no way was prejudicial to him.

We have found no substantial error in the record and the judgment is therefore affirmed.