## Glickman v. Harlan Wallins Coal Co. et al.

Nov. 14, 1939.

Rose & Rose for appellant.

Cleon K. Calvert and D. B. Smith for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This action was brought in the Harlan circuit court by the appellant, Isaac Glickman, an itinerant merchant, against the appellees, Harlan Wallins Coal Company and Pearl Bassham, to recover damages for his alleged false arrest and imprisonment.

From a judgment entered by the Hon. Joe C. Baker, special judge, on a directed verdict given at the conclusion of all the evidence, plaintiff prosecutes this appeal.

Appellant asks a reversal of this judgment upon the ground assigned that the court, in sustaining the defendants' motion for a peremptory instruction and in so directing the jury, committed a reversible error.

Such being the character of appellant's attack on the judgment, it is needful, for a clear understanding of our decision of the merit of the attack, that we herein set out a summary of the facts pleaded and testified to by plaintiff and his witness, which were held insufficient to raise a factual issue calling for its submission to the jury.

The appellant by his petition alleged in substance that on Thursday, October 1, 1936, at about noon, the defendants jointly, falsely, maliciously and without probable cause therefor, illegally and against plaintiff's will and consent, caused him to be arrested publicly at Verda by a deputy sheriff and carried thence, in the presence of many people, to Harlan, the county seat, some seven miles distant, where he was illegally, falsely and maliciously imprisoned in the jail for some hours or until released on executing a bond to appear in the Harlan county court for trial, which was set for the Saturday following, upon the charge made against him, that he had trespassed upon the mining property of the defendant upon the occasion in evidence; that on plaintiff's appearing for trial on the date set, the case was continued until the next Saturday, October 10, at which time he again appeared, when the charge was dismissed without trial. His petition further alleged that this wanton, willful and malicious arrest and imprisonment of him had directly and proximately caused plaintiff much physical pain and mental anguish and "had injured him in his credit and circumstances," for which he prayed that he be adjudged damages against the defendants, the Harlan Wallins Coal Company and Pearl Bassham, jointly and severally, in the sum of $10,000 and costs.

The defendants filed separate answers, by which they each denied the allegations of the petition and prayed that it be dismissed.

The facts attending the alleged false arrest of the plaintiff, as his and his witnesses' testimony conduce to show, are that at the time of making this trip to Verda and for several years prior thereto he was engaged in selling bedclothing upon the installment payment plan to the men employed by the defendant company in its mine at Verda; that on the occasion in evidence, he and his driver, Lewis Pratt, had driven from Pineville to Verda, where they arrived about 11 A. M., when his car

was stopped on the public highway, in front of the mining property of the defendant and that, upon his getting out and going to its rear, he was taken hold of and arrested by Wash Irvin, a Harlan County Deputy Sheriff.

Plaintiff's somewhat feeling account and version of what then further occurred between him, Pearl Bassham and the deputy sheriff, terminating in the latter's alleged unlawful arrest of him, is as follows:

"We drive up on the side of the road * * * and I got out of the truck, and went to back to open up, and Wash Irvin run up to me, and say to get the devil out of here, and said you can't sell no goods in here, we have goods to sell, and I say why don't you sell it, and I told him I have been coming here for two years and nobody ever bothered me, and he said it didn't make any difference you get out of here, and I say I will see Mr. Bassham, and see what he says about it, and he says he is at dinner, and I say I will wait until after his dinner, * * * and see what he says, and he hollered for somebody and said go tell Bassham I want to see him and directly Bassham came out, and he said this man don't want to leave the camp, and he said put him in jail, put him in jail, right now, and Wash Irvin took me by the arm and I said you are hurting my arm, and I don't mean no offense, I am going if I have to go to jail, and my driver spoke up and said not to hurt me, and he said to him, if you say another word I will put you in jail too. He took me to his car, and took me to jail, and I told my driver to follow, and I will tell him what to do. He took me right up to jail, and the jailer asked for the warrant, and he said I haven't got any warrant, and he said what is he charged with, and he said trespassing, and he locked me up."

When plaintiff was asked if he knew the defendant, Pearl Bassham, and how long had he known him, he answered, "Yes sir, two years; no, four years." Also, when asked, "Where were you when Wash Irvin arrested you?" he answered, "I was on the public highway at Verda" and that he was not on the defendant coal company's premises at all; that when Irvin took him to the jailer, he told the jailer he had no warrant for his (Glickman's) arrest, but nevertheless he was locked up in jail, where he was confined for three or

four hours, until released upon friends coming to his aid and executing bond for his appearance for trial, as stated supra; also that, when he appeared in court at the time set for his trial, there was nobody there but Wash Irvin, and he was told by the judge that Pearl Bassham was out of town and couldn't be there and that trial of the case was postponed until the following Saturday, when, again, neither Irvin nor Bassham, the prosecuting witnesses, appearing, the judge said to him, "Glickman, go home and forget about it."

Glickman further testifies that upon being dismissed, he decided that he had better go back over to Verda and see Bassham and find out if he could collect some of his accounts that were owing him by the miners, and that they drove from Harlan down to Verda, and:

"We went into the office. Bassham was sitting there in his office instead of being in Knoxville, and he said what do you want, and I said I come to see if I can collect the money I had out, and he said no sir, you can't collect up here, get the devil away from here."

Further he testifies that Irvin, the deputy sheriff, after arresting him, at Verda, on the order of Bassham, who, it is admitted, was then vice president and supervisory agent of the defendant company, carried him in his car directly to the jail in Harlan, where some forty or fifty people saw him brought to jail against his will, and locked up in the jail. Further he testified that Irvin never at any time, when arresting him, either had or showed him a warrant ordering his arrest, nor said he had a warrant for his arrest, nor did he ever see any warrant in his possession, calling for his arrest.

Plaintiff, when asked if the defendant, Pearl Bassham, was present and ordered his arrest, at the time Irvin arrested him, answered, "Yes sir, he is the man that told him to do it." When asked, in reference to his charged trespass, "At the time you were arrested, had you turned off this main road and gone into the camp?" he answered, "No."

Mr. Pratt, the plaintiff's driver, who accompanied him to the coal company's mine upon this occasion, in testifying, fully corroborated plaintiff in his account given as to the facts and circumstances of his arrest by Irvin and testified that he heard the Mr. Bassham they talked with there tell "the sheriff to arrest Isaac

Glickman, and put him in jail," and that Irvin, the deputy sheriff who arrested Glickman, did not, at the time, profess to have or say anything about having a warrant ordering his arrest. Further he testified that plaintiff had asked the deputy sheriff, when threatening to arrest him, to let him speak to Mr. Pearl Bassham, the mine official in charge, and that Bassham was called and came to his door and told him he couldn't sell goods there.

Such was the proof given upon the trial conducing to show that appellant was, as alleged, unlawfully arrested and imprisoned by Irvin, the deputy sheriff, when acting under the direction and order of the defendant, Pearl Bassham, who was then the alleged official in charge of the mining operation of the Harlan Wallins Coal Company, his co-appellee.

Clearly this evidence constituted a scintilla of probative evidence or some substantial proof that plaintiff was wrongfully caused to suffer a false arrest and imprisonment by Bassham and his principal, the co-appellee, the mining company, even though such claim and testimony are positively denied by Pearl Bassham for himself and the company, who testifies, in direct contradiction of the plaintiff, that the deputy sheriff, Irvin, did not arrest plaintiff upon this occasion under his order and that he did not give Irvin any direction to arrest him; that he did not know of this trouble when it occurred, for the reason that he was at the time absent from the mine in Harlan county, and was, for the better part of the month, engaged in selling coal for the company in numerous named cities; and that he did not even learn of plaintiff's claimed false arrest and imprisonment until some two or three weeks after he had filed this suit seeking damages therefor.

Plaintiff was further contradicted in his evidence, that the deputy sheriff had no warrant authorizing his arrest, by the county judge, Saylor, who stated that he issued the warrant upon the sworn information of Irvin that plaintiff was at the time trespassing upon the property of the mining company and that he knew the said deputy, after obtaining the warrant, made his arrest of plaintiff under his order for his arrest.

This the judge insisted upon, even while admitting that he did not know just when or at what time of the day Irvin arrested plaintiff under the warrant.

At the conclusion of the hearing of this directly conflicting testimony of the parties, the court, upon the motion then made by defendants for a directed verdict, did (over plaintiff's objection) peremptorily instruct the jury to return a verdict for the defendants, which in obedience thereto the jury returned and upon which the judgment appealed from was accordingly entered, with exceptions saved by appellant to the ruling.

From the above statement of the evidence, it is apparent that there is here presented for our decision but the single question of whether or not the court's here giving of a directed verdict for the defendant was so violative of and at variance with the well-settled rules controlling the trial court's right to sustain defendants' motion for a directed verdict as to prejudicially affect the substantial rights of the plaintiff and thus entitle him to a reversal of the judgment.

It is to be noted that the testimony given for the plaintiff clearly and substantially conduces to show that he was upon the occasion in evidence falsely arrested and imprisoned by the deputy sheriff, when acting under the order, claimed unlawfully given, of the appellee, Bassham and that the deputy sheriff unlawfully carried him to and imprisoned him in the Harlan jail, amid the jeers and jibes of the onlooking crowd, greatly to his humiliation and discredit. Further, the evidence made clear-cut the issue as to whether or not the officer observed or complied with the duty imposed by Section 39, Criminal Code of Practice, requiring him, when making the arrest, to inform the plaintiff of his intention to arrest him and the offense, committed in his presence, for which he was being arrested, or, if acting under a warrant of arrest, to show him the warrant.

There is no evidence whatever given by the defendant tending to show the deputy's observance of or compliance with these legal requirements. On the other hand, the proof given by plaintiff and his witness, Pratt, positively shows that the arresting officer, Irvin, did not at the time of arresting him state what, if any, offense he was committing in his presence that warranted his arrest nor did he inform him that he was arresting him under a warrant or manifest the same. Further, as stated supra, the proof as to whether the appellee, Pearl Bassham, directed his arrest was directly in conflict, in that the plaintiff testified that Pearl Bassham, whom he

had known for some years and recognized upon this occasion, directed Irvin to arrest him, while Bassham testified that he wasn't there and didn't give any such order or presents merely a case where the plaintiff says he did and the defendant says he didn't.

In such case, the question presented is as to the weight and credibility of the conflicting evidence, and which of the witnesses is to be believed. The determination of such factual issue, however, under the rule, well-settled by the repeated declarations of this court, is exclusively within the province of the jury and the court is without right or authority to take or withhold it from the jury by directing a verdict for the defendants, where there is even a scintilla of evidence given in support of plaintiff's claim.

So was it declared in the case of Alsbrook v. Commonwealth, 243 Ky. 814, 50 S. W. (2d) 22, 24:

> "The determination of the truth from the conflicting contentions was for the jury, and the court, under the evidence, was bound to leave the problem to that tribunal. * * *
>
> "The jury is the tribunal established by law to determine the quality of conduct, the credibility of witnesses, and the probative value of testimony."

Again was such rule declared in Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502, 505, as follows:

> "It has been so often enunciated by this court that where there is a conflict of evidence, the question must be submitted to the jury, and it is error to grant a nonsuit or to direct a verdict, that we deem it unnecessary to cite authorities as to this question. See [18] Kentucky Digest, Trials, Section 143. The verdict should not be directed if the evidence constitutes a scintilla of proof, though it might be insufficient to sustain the verdict. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220. The jury are the triers of the facts, and it is the duty of the court when a peremptory instruction is asked to construe the evidence most favorably to the plaintiff."

The complained of ruling of the court in the instant case, upon the conflicting evidence here presented, we conclude was not in harmony with this general rule

stated above and was, in taking from the jury the determination of the factual issues raised by the conflicting and substantial proof introduced by the parties, so prejudicial to the rights of plaintiff that he was denied a fair trial. For such reason the judgment should be and it is reversed and cause remanded for proceedings consistent with this opinion.