## Greenwell's Adm'r v. Burba and four other cases

April 28, 1944.

As Modified on Denial of Rehearing Oct. 6, 1944.

Victor Kelley, Ernest Woodward, and Woodward, Dawson & Hobson for appellants.

E. N. Fulton and W. R. Gentry for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER—Affirming.

The above styled five actions were brought in the Nelson circuit court against Felix Burba, here the appellee, for the recovery of damages by the several ad-

ministrators of the five young men who were killed in an automobile accident, which they alleged was brought about by the negligence of the defendant.

The tragic accident out of which this litigation arose occurred about 10 P. M., Saturday, November 15, 1941, just south of the Beech Fork river bridge on highway 31-E, running between Bardstown and New Haven, as they were returning to their homes in Bardstown, about a mile distant therefrom.

An administrator was appointed for each of the five young men who were killed in this accident, each of whom instituted a separate action against the appellee, Burba, on behalf of the estates of their respective decedents.

The evidence is to the effect that on the Saturday afternoon on November 15, 1941, seven boys or young men, living in Bardstown and ranging in age from seventeen to nineteen years, who all wished to go to the nearby town of New Haven to attend a dance to be given there that night, got together and proceeded to make plans whereby they could attend it. By the joint plan agreed upon it was provided that one of them, J. R. Durbin, would borrow a Ford coupe from their friend, Barney Rizer, with which to make the trip and that they would all "chip in" to pay the cost of the gas used in making the trip and the evidence is that they all did so contribute.

Pursuant to their plan, later that afternoon, at about dark, they left Bardstown in the borrowed car, driven by Durbin, for New Haven, their common objective, all apparently having had a community of interest in attending the dance to be given there. Their purpose being to make it a pleasure trip, in going to New Haven they visited restaurants and soft drink stands in several of the small towns along the way, at which it appears they got refreshments, played the music boxes, etc., but that none of them took any intoxicating drinks, after which they drove to New Haven and went to the Rolling Fork Inn. About nine o'clock, after picking up another boy there, they started on their return trip to their homes in Bardstown over highway 31-E, four of the boys riding on the front seat and four on the rumble seat of the car.

It is further disclosed by the record that the appellee, Felix Burba, a quarry employee of Nelson coun-

ty, upon quitting work that afternoon, drove into Bardstown in the county truck, of which he had charge, to take several of his co-employees to their homes, after which he drove southwardly over this same highway 31-E to his home some eight miles distant, where he changed his clothes and ate supper. At about five o'clock he returned in the truck to Bardstown, where he proceeded to stand around, talking with friends, and to buy a half pint of whiskey, which it appears he shared with his friends, himself taking "about two drinks" of it. The evidence is contradictory as to whether appellee was intoxicated at the time he left Bardstown, about nine thirty, with his companion and neighbor, Zola Woods, to return to his home, some eight miles distant, as stated supra, some of those who met and talked with him at such time stating that he was drunk and others that he was not.

Appellee, after driving almost due south over the Bardstown-New Haven road or highway 31-E and crossing the long Beech Fork river bridge, about a mile south of Bardstown, continued to drive on up the somewhat steep and winding road leading up the hill and had passed a rock pile on the east side of the road when suddenly the motor of his truck stopped and his starter failed, as he states "It did all the time I was driving the truck."

His truck having thus stalled, he testifies that as there was a steep, declivitous bank on the west side of the road, upon which he was driving, and his brakes were bad, he backed the truck down across the road and parked it on his left or its east side near the rock pile, which was but a few feet distant from the eastern edge of the traveled portion of the road, where the ground was level.

The evidence is conflicting as to just how far the truck, as parked by appellee, extended over on the east traveled portion of the highway, the appellee and some of his witnesses stating that its right front wheel was left standing only about a foot on the traveled portion of the highway on the east, while others stated that the bumper of the truck extended almost over to the medial line.

Appellee and his companion, Zola Woods, testify that as they were sitting there in the parked truck, they saw the car in which these eight young men were returning home coming northwardly over the top and down the hill on their right or the east side of the road to-

wards their truck, which was parked in the lane or path of travel in which the car was approaching, at a high and reckless rate of speed; that it was "making seventy-five miles—going at full speed;" and that they got out of the truck and attempted to flag the car down or over onto the other or west side of the road, upon which, they state, there was then no car approaching.

However, Harry Hicks, a witness for plaintiffs, stated that he followed the boys' car all the way from New Haven, up to the top of and down the hill, and that they were not driving at an excessive rate of speed as they went down the hill. Also he testified that there was then a car, which he saw approaching from the north, in the vicinity of the truck, the two serving to block the boys' passway on each side of the road.

It appears admitted that when the boys' car reached a point in the road a hundred and fifty feet distant from where the truck was parked, it left the traveled portion of the road and continued to run at high speed along or by the east shoulder of the road, through the opening between the rear of the truck and the nearby rock pile and over a part of the rock pile, from which it leaped, as shown both by the testimony and the map introduced in evidence portraying the car's tracks, a distance of some fifty-six feet, where it struck solid ground and continued to run a further distance of twenty-eight feet, where the body of the first of the five boys who were thrown out and killed was found, and from thence still onward a distance of some sixty-four feet, where the car ran over the embankment, turned over and finally stopped, the car having traveled from the point where it left the highway a distance of some three hundred feet, and the inference is that the driver of the car was unable to stop it either because the car's brakes were bad or because the car was being driven at an excessive rate of speed.

Shortly following this accident, in which these five young men met their deaths, appellee was indicted in the Nelson circuit court on five charges of manslaughter. However, he was tried on only the one indictment or charge which arose out of the death of Shelton Brookshier, Jr.

On the trial of this case in the Nelson circuit court, the appellee was by the jury convicted and his punishment fixed at a fine of $100.

Shortly following the appellee's conviction in the commonwealth case, the above-styled five separate actions were filed against the appellee, seeking recovery of damages in behalf of the decedents' respective estates, alleging that their deaths were brought about by his negligence in leaving his unlighted truck in the nighttime parked on his left or wrong side of the road, thereby obstructing and blocking the lane of travel on which the boy's car was being driven down the hill, on their right or east side of the highway.

The several petitions filed by the administrators in these actions were all substantially similar, each alleging that on November 15, 1941, about ten P. M., the appellee Burba drove an automobile truck, belonging to Nelson county, south on U. S. highway 31-E and left same standing on the traveled portion of the highway without lights; that appellants' decedents were riding as guests in an automobile traveling north on said highway, which was caused to leave the road and overturn as the result of the gross negligence of appellee in leaving his truck parked on the east side of the road; and that as a result of appellee's negligence, appellants' decedents were killed and their estates damaged in the amount of $15,000 each.

Appellee filed answer in each case, which were likewise identical in every material respect. Each of the answers by its first paragraph denied the allegations of the petition and by its second paragraph pleaded that the appellant's decedent was guilty of contributory negligence, which was further elaborated in paragraph 3, where he pleaded that appellant's decedent was riding with seven other boys in the automobile and that the boys were pleasure riding and engaged in a joint enterprise or venture. Further, by its fourth paragraph, after repeating the allegations set out in its third, he alleged that four boys were riding on the rear seat and four on the front seat and that all assumed the risk incident to the negligence of the other, or that the negligence of the driver was imputed to each of the others, barring their right of recovery of damages against the appellee, a third party.

By consent the affirmative allegations of the answers were controverted of record.

It may be here stated that as each and all of the cases presented the same questions both of law and fact,

they were, upon the trial court's motion, ordered tried at the same time before the same jury as one.

Upon submission of these consolidated cases, at the conclusion of the introduction of evidence both the plaintiffs and defendant by counsel moved for peremptory instruction, which was refused, when the jury, under the instructions submitted by the court on its own motion, returned a nine juror verdict in favor of the appellee, upon which judgment was accordingly entered.

Plaintiffs' motions and grounds for a new trial having been overruled, each have prosecuted an appeal, which they request be here consolidated, as were the cases in the court below, and disposed of in one opinion.

Treating appellants' request as a motion to consolidate the cases appealed, the same is sustained and they will be accordingly so considered and disposed of.

In the appellants' motion for a new trial, the following grounds were alleged: (a) Improper rulings on the evidence; (b) that the instructions were both erroneous and conflicting and furnished no guide for the jury's determination of the evidence; and (c) because the verdict is contrary to the evidence and also to the law as given by the court.

A reversal of the judgment is urged on each of these grounds, which we will now proceed to consider and discuss in the order presented.

The first of the assignments urged for reversal of the judgment is directed at the trial court's ruling, to which appellants excepted, in refusing to permit the appellants to introduce in evidence on the trial of the five consolidated cases the record in the case of the commonwealth against appellee, to establish that he was convicted of manslaughter in that prosecution on the same facts involved in these later consolidated civil actions.

Appellants contend that this one erroneous ruling by the court, in excluding that evidence, was so prejudicial an error as compels a reversal of the judgment, even if no other ground of error were assigned.

In support of that contention, appellants in this instance very strongly rely on the ruling of this court lately made and declared in the case of Wolff v. Em-

ployers Fire Insurance Co., 282 Ky. 824, 140 S. W. 2d 640, 645, 130 A.L.R. 682, in a very able opinion written for it by Judge Thomas, where, after reviewing the cases and texts deciding and discussing this point, it was stated as the court's conclusion that: "The judgment of conviction as well as the judgment of acquittal are each admissible circumstantial facts available to the party in whose favor they are, in a later civil action involving the same facts as were determined in the criminal prosecution and which we are convinced is amply supported by logic and reason and should be approved even in the absence of any specific precedent therefor. * * * With all of the known safeguards * * * thrown around a defendant in a criminal prosecution, why, may we ask, should a judgment convicting a litigant of a crime not create a circumstance tending to prove his guilt in a later civil action involving the same facts? We are unable to perceive the soundness of a contrary rule although it may be approved by a very considerable majority of the courts" etc.

See also, to like effect, section 521, page 280, American Law Institute's Model Code of Evidence, wherein it is said: "Evidence of a subsisting judgment adjudging a person guilty of a crime or a misdemeanor is admissible as tending to prove the facts recited therein and every fact essential to sustain the judgment." There is also given in that text five illustrations wherein such rule of evidence is held applicable, some of which in their facts are analogous to those here presented.

In view of the rule thus expressly declared and established in the Wolff case and the above text, as well as in that of 20 Am. Jur., Sec. 273, p. 260, we are led to conclude that the trial court erred at most, in view of the conclusive nature of the proof that the accident was caused solely by the boys' negligence, only technically. We are of the opinion that the court's error in refusing to admit the record of the appellee's conviction in the commonwealth case was not of prejudicial or reversible character, where the evidence clearly showed that the appellee's conceded negligence, in parking his truck on the wrong side of the road, without lights, was not the proximate cause of the accident in which these five boys were killed but that the proximate cause thereof was, as stated supra, the negligence of the boys in driving their car down the hill at a reckless rate of speed, causing it to both run off the traveled portion of the road and con-

tinue to run along the shoulder of the road for some 300 feet, throwing out and killing the boys, when it finally turned over and stopped. Clearly this would not have occurred had the boys been driving at a reasonable rate of speed, with the brakes of their car in good condition, as they came down the hill, as it is shown that had they been going at a reasonable rate of speed, they could have stopped their car within the distance of the 150 feet intervening between the point it left the traveled portion of the road and the point where the truck was wrongfully parked in its lane of travel. Also the fact that the car traveled some 300 feet after it left the traveled portion of the road without its driver being able to bring it to a stop is very clear and convincing evidence that the boys were driving at a high and reckless rate of speed, which directly brought about the accident resulting in the death of five of the boys riding in the car.

Such being the clear showing made both by the direct testimony of two eyewitnesses and the physical facts stated, that the reckless rate of speed at which the car was being driven was the sole and proximate cause of the accident, the introduction in evidence of the appellee's conviction of manslaughter in the commonwealth case could not have affected nor changed the jury's verdict, finding for appellee, where only such a verdict could be rendered, "in accord with the basic principle that liability for negligence is predicated upon fault of the person charged, and that a loss suffered by one person which is not attributable to negligence or misconduct on the part of another is damnum absque injuria." 38 Am. Jur., sec. 6, p. 648. "Liability for negligence depends upon a showing that the injury suffered by the plaintiff was caused by the alleged wrongful act or omission of the defendant" and "merely to show a connection between the negligence and the injury is not sufficient to establish liability for negligence. The connection must be such that the law will regard the negligent act as the proximate cause of the injury." 38 Am. Jur., sec. 27, pp. 672 and 673. Further was it said in the same text, section 50, page 695, that "the proximate cause of an injury is that cause, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." See further to like effect Suter's Adm'r. v. Kentucky Power & Light Co., 256 Ky. 356, 76 S. W. 2d 29, 32 wherein it is said:

"Proximate cause is to be determined as a fact in view of the circumstances attending it. Beiser v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 522, 153 S. W. 742, 43 L. R. A., N. S., 1050. It is that cause which naturally leads to, and which might have been expected to have produced, the result. The connection of cause and effect must be established. And if a cause is remote and only furnished the condition or occasion of the injury, it is not the proximate cause thereof. * * * It is superfluous to say there can be no recovery on account of negligence of another which was not the proximate cause of the injury complained of. Evans' Adm'r v. Cumberland Tel. & Tel. Co., 135 Ky. 66, 121 S. W. 959, 135 Am. St. Rep. 444.''

Such being the facts as testified by the witnesses and portrayed by the map as explained and showing the situation, it is clear that the negligence of the young men in recklessly driving their car at a high rate of speed was the proximate cause of the accident and the resulting deaths of five of the car's eight occupants.

The second assignment of error is to the effect that the instructions were erroneous and conflicting. This too we deem is without merit, as the instructions appear to follow the language of the applicable sections of the statutes.

While one or more of the instructions as given may not have been called for under the evidence, they, if in any respect variant, had no prejudicial effect, as under the showing of the record as to the circumstances and conditions under which this accident happened and whose was the responsibility therefor, we are of the opinion, as said in the case of Suter's Adm'r., supra, that "it should have been expected the jury's verdict would be for the defendant, whatever the instructions of the court might have been, other than a peremptory in favor of the administrator," as to which we are constrained to conclude that the appellee was entitled to a peremptory instruction under the compelling physical evidence in this case, clearly establishing that the reckless rate of speed at which the boys were driving was the proximate cause of their tragic accident.

Such being our view of the case, it follows that the last ground assigned for reversal of the judgment, that the verdict was contrary to the evidence and to the

law, is also without merit as we are of the opinion that the evidence very fully and sufficiently justified and supported the verdict and also that it was quite sufficient to show that the boys, in taking this trip for the common purpose of attending a dance in New Haven, were, as alleged in the answer, associated together in the execution of a common purpose and undertaking, wherein each became the agent of the other in carrying out their plans, so that the negligence of one was attributable to each of the others.

In Berry's Law of Automobiles 7th Ed., sec. 5.158, p. 206, vol. 5 it is said that:

"To constitute a joint enterprise between a passenger and the driver of an automobile, within the meaning of the law of negligence, there must be such community of interest in the operation as to give each an equal right of control.

"Joint enterprise is the joint prosecution of a common purpose under such circumstances that each member of such enterprise has the authority to act in respect to the control of the agencies employed to execute such common purpose."

The evidence, as above set out, clearly shows the boys' agreement made to take this trip together in a car to be borrowed by one of their number for the use of them all and that they would all contribute for paying the cost of making the trip.

The defendant by his answer pleaded that such was the arrangement between the boys and that the negligence of the driver was attributable or to be imputed in such case to each of the co-adventurers. As said in 38 Am. Jur., sec. 234, p. 919: "The term 'imputed negligence' refers to the rule which visits upon one person responsibility for the negligence of another. The doctrine is usually invoked to defeat liability to the plaintiff in a negligence action by charging him with the concurrent negligence of a third person, but it is not necessarily so restricted."

We entertain no doubt that under the terms of the boys' agreement made when planning a way by which they could all get to the dance, under which they all contributed money with which to pay the expenses of the trip, they became co-adventurers and that each of them had the like right and privilege of directing the move-

ment and management of the car in which they were making the trip.

In the case of Dorris v. Stevens' Adm'r., 266 Ky. 602, 607, 99 S. W. 2d 755, 757, it is said that "the general rule is that where the action is brought against a third party the negligence of one member of the joint enterprise will be imputed to the other" and it was also there held that recovery against driver of an automobile for death of passengers in collision was not precluded because driver and passengers were engaged in a joint enterprise, on the theory that negligence of driver was imputable to the passengers. In the course of the opinion it is said that the rule above quoted "is sound, and had been adopted by practically every court which has passed upon the question. A collection of the cases will be found in the annotations in 62 A. L. R. 442, and 85 A. L. R. 632. Even in an action against a third party, it must be shown that the injured person had some right to control, manage, or direct the automobile. As said in Stearns v. Lindow, 63 App. D. C. 134, 70 F. 2d 738, 740, 'to constitute joint enterprise in such a case there must be not only joint or community interest, but also an equal right express or implied to direct and control the management and movement of the car.' Section 491 of the American Law Institute's Restatement of the Law of Torts reads:

" 'Any one of several persons engaged in an enterprise is barred from recovery against a negligent defendant by the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to third persons injured by the negligence of a fellow member.' "

Therefore, the relation existing between the members of this party being that of co-adventurers, the negligence of the driver, Durbin, was imputed to the other members of the group and accordingly the court rightly ruled that such being the situation, the administrators of the young boys who were killed could not recover against the appellee, a third party, as the negligence of Durbin, in driving the car at the excessive rate of speed which brought about the accident in which these five boys were killed, was imputed to each of the occupants of the car and plaintiffs were not entitled to recover damages for their deaths.

Judgment affirmed.