## BROWN et al. v. CRUMPTON.

Court of Appeals of Kentucky.
March 28, 1952.

Rehearing Denied Dec. 12, 1952.

John E. Richardson, Glasgow, for appellants.

Wilson & Wilson, Glasgow, for appellee.

STANLEY, Commissioner.

The judgment is for $20,783.40 for personal injuries, consequential expenses and damage to the automobile of the appellee, Robert L. Crumpton. The appellants are G. E. Brown and Emily Bartley, partners doing business as the Glasgow Ice Cream Company. Appellee's passenger car and appellants' refrigerator truck collided on a straight road about three miles east of Glasgow during the afternoon of March 4, 1948. The truck was traveling westwardly toward Glasgow and the automobile east-wardly toward Burkesville. The appellants filed the suit for damages to their truck, and Crumpton filed a counterclaim for his damages.

The appellee was seriously injured and his companion was killed. Crumpton testified the truck came over the crest of a hill at 50 or 60 mph and was two-thirds of the way over on its wrong side of the road. He cut his wheels to the right and the driver of the truck to the left, and the cars hit head-on. The truck driver, W. A. Shaw, testified he was not going more than 40 or 45 mph as he came over the crest; Crumpton's car was over on the wrong side of the road, and he was well over on his own side; he sounded his horn and applied his brakes and had practically come to a stop when the collision occurred. He is corroborated by J. A. Walkup, who was with him in the truck, and in a substantial degree by S. S. Riggsby, who saw the cars meeting each other. When the cars came to rest, the front of the truck was in the ditch on the passenger car's side. It had reversed ends and was headed toward Glasgow. The testimony is directly contradictory as to whether Crumpton, while pinned within the wreckage of his car, badly injured, told Shaw that he was eating, didn't look up and had not seen him. Several witnesses say that Crumpton was unconscious and others that he was calling to be released. The most significant evidence is that of a number of witnesses that marks and tracks made by the truck showed that it was on its right side when the collision occurred. There is a bit of evidence to the contrary and substantial evidence that the glass and dirt of the wrecked cars indicated the collision may have happened on Crumpton's side of the road. The testimony of the witnesses as to the marks and tracks on the truck's side is so potent as to make the preponderating weight of the evidence favorable to the ice cream company. But Shaw, testifying as to certain marks or cuts on the road, said: "That was where my front springs was dragging on the highway. I cut my brakes loose and knocked the front axle out from under the truck. They started in well on my side of the road and went angl-

ing to his side of the road where the truck and the car both stopped." A picture of the wrecked truck seems to show that it was the right spring that was dragging. It is apparent that references by some of the witnesses as to the marks or tracks starting on the truck's side of the road were caused by the scraping of the front spring, although the witnesses did not know what caused the cut or imprint in the road. Considering this evidence, together with the fact that the pictures of the wrecked cars, the front of each being badly smashed, make it appear that the collision was very nearly head-on, certainly not a mere side-swiping, we conclude that the question of responsibility for the accident was for the jury to determine, even though the weight of the evidence was for the ice cream company. Powers' Adm'r v. Wiley, 241 Ky. 645, 44 S.W.2d 591; Glickman v. Harlan Wallins Coal Co., 280 Ky. 477, 133 S.W.2d 718; Owings v. Webb's Executor, 304 Ky. 748, 202 S.W.2d 410.

The first instruction covered the duties of both drivers and authorized a verdict against the one found to have violated any of them. It did not embrace the factor of speed. Seven other instructions related to the measures of damage, defined negligence and contributory negligence and included the so-called "dogfall" instruction and one that nine jurors could make a verdict. The last instruction, No. 9, stated it to be the duty of the driver of the truck to have had it under reasonable control, to exercise ordinary care and "not to drive the same at a speed in excess of 30 miles per hour." It authorized a verdict for Crumpton if the truck driver had failed to observe any of those duties and such failure was the proximate cause of the collision.

The appellants argue that this instruction should not have been given as the matter of speed could not be regarded as a factor in causing the accident, the sole question being which one of the vehicles was on the wrong side of the road. The form of the instruction is criticized because it placed an absolute liability upon the appellants if the truck was running more than 30 mph instead of defining the duty of the driver to operate the truck at a reasonable and proper

speed, with the statutory rate stated as being only prima facie negligence. It is also criticized because it repeats the factors of reasonable control and ordinary care which had already been stated in the first instruction. It is further argued that the separate instruction on speed placed at the end of the series gave that element undue prominence and emphasis, and had the effect of making a strong and lasting impression on the jury.

We need not consider the complaint as to the form of the instruction. Excessive speed of an automobile does not lead to liability unless it was the proximate cause of the injury, or, as a matter of defense, a contributing cause. If the appellants' truck was on its proper side of the road, its speed, even though it may have exceeded the legal rate, KRS 189.390(3), could have played no part in causing the accident. Similarly, even though the truck was on its wrong side, its speed could not have been the proximate cause of the collision with the automobile on its right side of the road. There are cases where the facts may be close to the present that would justify an instruction on speed, e. g., Greenwell's Adm'r v. Burba, 298 Ky. 255, 182 S.W.2d 436, or where a car skidded into another. But we see in this case no relation of the speed of the truck as a proximate cause of the accident. Denunzio v. Donahue, 204 Ky. 705, 265 S.W. 299; Thronton v. Phillips, 262 Ky. 346, 90 S.W.2d 347; Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Davis v. Kunkle, 302 Ky. 258, 194 S.W.2d 513; Baber v. Merman, Ky., 249 S.W.2d 142; O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582.

We are of opinion that it was error to have given the instruction on the speed of the truck. The question is resolved into whether it was prejudicial. In some cases we have held instructing on an unrelated duty, such as sounding the horn, was harmless. But this case is very close on the facts. Ordinarily instructions are read as a series, and it is sufficient if the entire group fairly and correctly states the law. Instructions to Juries, Stanley, Sec. 40. There is something in the appellants' argument that the effect of giving the separate instruction on speed at the very end of

the long series may have caused the jury to give great consideration to it. The jury may well have concluded that the truck came over the hill at an unlawful speed and because of that fact the owner should be held solely responsible for the collision. We cannot say that this instruction was not prejudicial. For this reason the judgment is

Reversed for further proceedings.