PILLSBURY–BALLARD, DIVISION OF PILLSBURY MILLS, Incorporated, Appellant,

v.

Carl G. SCOTT et al., Appellee.

John Clinton MEADORS, Jr., Appellant,

v.

Mrs. Marion R. SCOTT et al., Appellee.

Court of Appeals of Kentucky.

Oct. 21, 1955.

Terry L. Hatchett, Glasgow, for appellants.

Philip H. Wilson, Brents Dickinson, Jr., Glasgow, for appellees.

MOREMEN, Judge.

Appellants, Pillsbury-Ballard, Division of Pillsbury Mills, Incorporated, and John Clinton Meadors, salesman for and driver

of a vehicle of Pillsbury, prosecute appeals from a judgment in consolidated actions under the terms of which appellees recovered damages against them jointly in the sum of $350 and in which appellants' cross-claims for damages of approximately $8,000 were dismissed.

The various claims and counterclaims arose out of an automobile accident which occurred on Highway 163 in Metcalfe County. The appellant, Meadors, was driving the Pillsbury automobile north towards London and the appellee, Mrs. Scott, was driving her automobile in a southerly direction. Mrs. Scott executed a left hand turn with the intention to enter a private driveway on her left side of the road. When she had almost completed this turn, she was struck by appellant's automobile. The accident happened about 300 feet from a sharp curve in the road and Mrs. Scott testified that she approached this curve at a rate of 15 to 20 miles per hour, had looked ahead and also into her rear view mirror and having failed to see traffic in either direction, turned diagonally across the road a short distance before she reached the private driveway. She testified that while she was on the right side of the road she could see a distance of 350 feet ahead, and when she pulled to the left side she could see a distance of 480 feet. She stated that when she was about half way across the road, she saw two vehicles approaching around the curve—a jeep and the appellant's car. The appellant's vehicle was in the act of passing the slower moving jeep at a rate of speed estimated by Mrs. Scott to be about 80 miles per hour. Mr. Howard, the driver of the jeep, corroborates her estimate of the degree of speed attained by the appellant's car when it passed him on the curve.

On the other hand, Meadors testified that Mrs. Scott drove into his lane of traffic without signaling and continued some 15 to 20 feet (in the left traffic lane) before turning. He stated that he applied his brakes, sounded his horn, and could not stop before striking the Scott car. He estimated he became aware of the danger when he was approximately 100 feet from the point of collision. He estimated his speed to be 45 miles per hour.

The evidence shows that the Meadors car skidded some 80 feet before striking the Scott car in the "right front end," which by this time was almost completely off the pavement, and knocked it approximately 35 additional feet against some mail boxes.

It is appellant's theory that the Scott car caused the accident because Mrs. Scott, without signaling, swerved across the road into Meador's lane of traffic, too close to him to prevent a collision. On the other hand, appellee's theory is that she turned without signaling because no traffic was in sight which could be affected by such a signal and that the cause of the accident was the failure of Meadors to proceed at a legal speed and to keep a proper lookout ahead.

Appellants argue many grounds for reversal, all of which seem to be predicated upon the idea that Mrs. Scott entered the left hand side of the road at her peril and this alleged negligence on her part was the sole and proximate cause of the accident.

■ It is contended that appellants were entitled to a directed verdict in their favor because of Mrs. Scott's negligence and the jury should have fixed only the amount of damages sustained by the appellants. This argument overlooks the fact that a person has the right under proper conditions to make a left hand turn off of a highway into a private driveway if it is done without violation of duties, both under the statutes and under the law generally, to other persons operating vehicles on the road. The jury had a right to accept appellees' version of how the accident happened. It is true that Mrs. Scott failed to signal her intention to turn, but the statute requiring such a signal dispenses with the necessity where the traffic is so distant that it would not be affected thereby. Subsection (1) of KRS 189.330 clearly contemplates that a driver of an automobile may turn left in front of approaching traffic so long as it is not negligently done.

In Hilsenrad v. Bowling, 292 Ky. 368, 166 S.W.2d 847, 849, a case very similar in fact, arguments were presented similar to those advanced in the case at bar.

In an opinion by Judge Rees, this court said:

"Appellant's theory of the case is that appellee's car swerved suddenly across the road immediately in the path of his car too close to him to prevent a collision. Appellee's theory is that she made a gradual turn to the left, beginning at a time when appellant's car was 600 feet away from her, and that the accident was caused by the high rate of speed at which he was traveling and his failure to keep a proper lookout ahead and to have his car under reasonable control. There is evidence to support both theories. The testimony of the two eyewitnesses, appellant and appellee, is in direct conflict. If we were sitting as a jury we might arrive at a verdict different from the verdict returned in the present case, but our duty is not to pass upon the credibility of the witnesses or to determine on which side the preponderance of the evidence lies but is solely to determine whether there is evidence sufficient to sustain the verdict returned by the jury. A case very similar on its facts, and which we think is controlling here, is Rutherford v. Smith, 284 Ky. 592, 145 S.W.2d 533, 535."

■ We think the summary of the evidence first above given in this opinion demonstrates that the jury could properly accept either version of how the accident happened and they accepted appellee's theory.

■ Appellants argue, however, that inasmuch as Mrs. Scott testified that Meadors was traveling at a rate of 80 miles per hour, she, in turning, ignored an obvious danger. It is not clear from the evidence that she made this estimation as the result of her first glance at the car. However, according to Mrs. Scott's other testimony, she had already committed herself to the turn and was on the left hand side of the road when she saw the approaching vehicle some distance away. In any event, on first impression, a driver has the right to assume that an approaching party is traveling at a legal rate of speed. Rutherford v. Smith, 284 Ky. 592, 145 S.W.2d 533.

In Davis v. Kunkle, 302 Ky. 258, 194 S.W.2d 513, 514, relied on by appellants, where the evidence clearly and conclusively showed that defendant's driver entered the left side of the highway without maintaining a proper lookout, without giving the statutory signal, and, at a time when traffic was not clear for 150 feet ahead, collided with plaintiff's oncoming automobile, which was but 80 feet away when the driver made the turnout, it was properly held under the conclusive evidence offered that the defendant's negligence was the sole and proximate cause of the collision. But that case was decided largely upon uncontradicted proof.

■ However, even in cases where both parties may be violating some statute in regard to the operation of motor vehicles upon public highways, it is still within the province of the jury to determine the immediate cause that is the last link in the chain of causation which led to the collision. Ashton v. Roop, Ky., 244 S.W.2d 727.

■ Appellants next argue that the court erred in failing to give instructions offered by them. We find no error. The tendered instructions, in substance, assume that Mrs. Scott saw the Meador vehicle before she attempted the turn and that, since (from her own testimony) Meadors was traveling at a great rate of speed, Mrs. Scott was under duty to yield the right-of-way to Meadors. As previously outlined, the evidence was in direct conflict on this point and Mrs. Scott also had the right to have her theory of the case submitted to the jury.

After a study of the instructions given, we believe the court adequately defined both parties' rights and duties and sufficiently submitted to the jury the entire law of the case.

Appellants next contend that the instructions were prejudicial in that they imposed a duty on Meadors as to speed and it is argued that speed was immaterial since the accident occurred in appellant's lane of traffic. Brown v. Crumpton, Ky., 252 S.W.2d 670, is cited in support of the argument.

We seem to be committed to the rule applied in a number of cases—Brown v. Crumpton, Ky., 252 S.W.2d 670; Coe v. Adwell, Ky., 244 S.W.2d 737; Rucker v. Clark, Ky., 239 S.W.2d 80; Fentress v. Hardin's Adm'x, Ky., 273 S.W.2d 575—where it was apparent that speed could not have been the proximate cause of the accident (and where usually there had been a headon collision and the principal question presented for determination was which car was on the wrong side of the road) that no instruction concerning speed should be given. But under the facts presented here, speed, as the jury by its verdict indicated, could well have been the proximate cause of the accident and the court properly submitted the question to the jury.

Appellants finally argue that the court erred in failing to discharge the jury and continue the case because of the following occurrence, which we take from the transcript of evidence.

"When Court convened after the Noon recess, Terry L. Hatchett, attorney for the Defendant, Pillsbury-Ballard, Division of Pillsbury Mills, Inc., and Plaintiff, John Clinton Meadors, Jr., informed the Court that the juror, R. L. Smith, had eaten lunch at a restaurant in Edmonton with Dallas Scott, a witness in the case, and the father of the Plaintiff, Carl G. Scott; that he did not know any of the conversation had between the two men at lunch, and they each paid for his own dinner, and he thereupon moved the Court to discharge the jury and continue the case, which motion the Court overruled, to which Pillsbury-Ballard, Division of Pillsbury Mills, Inc. and John Clinton Meadors, Jr., excepted and objected."

In the absence of a showing of misconduct, the bare fact that the two men had lunch together is insufficient ground for the court to discharge the jury. Under similar facts, in Chesapeake & O. R. Co. v. Moore, 181 Ky. 550, 205 S.W. 594 (where a party to the action was seen talking to a juror in the street and at the court house door without anything more being shown) a motion to discharge the jury was overruled. We believe the trial court's refusal to find a sinister significance to this meeting in a public restaurant in absence of even the suggestion of wrong doing, was correct and the motion to discharge the jury was properly overruled.

Judgment affirmed.